Margaret Cutwright, Executrix of the Estate of Effie C. McVay, Deceased, Appellant, v. Preachers' Aid Society, Appellee.

Gen. No. 8,691.

Opinion filed May 29, 1933.

Wilton A. Carr and Raymond G. Real, for appellant.

A. F. Bussard and Webber & Webber, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

This cause originated in a claim presented by appellee to the county court of Cumberland county, sitting in probate, upon a note signed and executed by one

Effie C. McVay, in her lifetime. The note is in the following form, to wit:

"$1,250,000 Illinois Bi-Conference Movement No....
 $1,250,000 Date June 4, 1923.

"IN CONSIDERATION of my interest in Conference Claimants and in consideration of others subscribing to the Illinois Bi-Conference Movement for One Million Two Hundred Fifty Thousand Dollars, as shown on the back of this subscription, I hereby pledge and promise to Conference Claimants of Illinois Conference the sum of Five Thousand Dollars ($5,000.00). This subscription is made upon the following terms and conditions:

"1—Stricken.

"2—This subscription shall become due upon the day of my decease and shall be payable on or before one year thereafter by my administrator or Executor out of the proceeds of my estate.

"3—This pledge shall bear interest at the rate of.... per cent (....%) per annum payable semi-annually from and after November first, 1923.

"The official finding of the Executive Committee as to whether the conditions of this pledge have been met, shall be binding and final.

"Name, EFFIE C. McVAY,<br>"Greenup, Illinois.

"Witness, W. D. FAIRCHILD

"Witness, J. ANDREW ARNETT

"Charge Greenup

"District Mattoon, Conference Illinois."

There was written with pen near the upper margin: "To Conference Claimants, Illinois Conference."

There was indorsed on the back of said note the following:

"It is Understood that funeral and other expenses shall be paid out of the holdings, real and personal of the signor and that all property held by her of whatsoever value above the Five Thousand Dollars named

on the face of this contract shall be the property of the beneficiaries of this contract.

"Effie C. McVay.

| | |
|---|---|
| "Illinois Weslyan University | $ 33,333.00 |
| "Illinois Womans College | 250,000.00 |
| "The Wesley Foundation | 250,000.00 |
| "Conference Claimants, Central Illinois Conference | 83,333.00 |
| "Conference Claimants, Illinois Conference | 166,667.00 |
| "Chaddock Boys School | 83,333.00 |
| "Expenses and Miscellaneous | 83,334.00 |

"Total Asking...........$1,250,000.00"

As to "Conference Claimants" it is conceded in the briefs that this is a generic term which has acquired a well-recognized secondary meaning in the Methodist Episcopal Church. It refers to retired or disabled ministers of the gospel of that denomination or the widows or orphans of deceased ministers, who, under the laws, usages and discipline of the Methodist Episcopal Church are entitled to receive support by way of or in the nature of a pension. There is no organization or corporation having for its legal title "Conference Claimants."

Also, as to "The Preachers Aid Society of the Illinois Annual Conference of the Methodist Episcopal Church," appellee's brief recites: "This is a corporation not for pecuniary profit organized under the laws of the State of Illinois and has been in continual existence since the year 1871. Pursuant to the laws, usages and discipline of the Methodist Episcopal Church, this corporation has been designated by the Illinois Annual Conference of the Methodist Episcopal Church as the official depository and custodian of all funds to be used in the support and maintenance of the Conference Claimants entitled to support and maintenance from the last named Conference."

The claim was allowed in the probate court in the sum of $5,000, and upon appeal to the circuit court and a trial *de novo,* the claim was again allowed and appellant has brought the record to this court by appeal for review.

Appellant has raised no question upon the legal right of the appellee to sue in this cause, and we raise none. There was no consideration of any kind for the execution of the instrument, except that expressed upon the face of the instrument, which expresses no consideration.

It is contended by appellant that a promise to make a gift is unenforceable. (*Williams v. Forbes,* 114 Ill. 167; *Walton v. Walton,* 70 Ill. 142; and *Arnold v. Franklin,* 3 Ill. App. 141.) It is further contended that a note executed and delivered as a gift is without a valuable consideration and will not support an action either at law or in equity. (*Arnold v. Franklin, supra; Beatty v. Western College,* 177 Ill. 280, and *Pratt v. Trustees,* 93 Ill. 475.) It is also further contended that a promissory note intended as a gift to the payee is but a promise to make a gift in the future. The gift is not executed until the note is paid; *Richardson v. Richardson,* 148 Ill. 563. And that a voluntary subscription stands as an offer until acted upon by the promisee and may be revoked by death before it is acted upon. (*Augustine v. Trustees of Methodist Episcopal Society,* 79 Ill. App. 452; *Pratt v. Trustees, supra; Beach v. First Methodist Episcopal Church,* 96 Ill. 177, and *Beatty v. Western College, supra.*) It is the law, also, that the labor and expense in obtaining other subscriptions do not constitute a consideration to support a subscription. (*Augustine v. Trustees, supra; Beatty v. Western College, supra; Presbyterian Church v. Cooper,* 112 N. Y. 517, 20 N. E. 352, 3 L. R. A. 468.)

The only basis of a consideration for the note in question is found in the principle that voluntary subscriptions become binding when advances have been

made or expenses incurred before notice of withdrawal, and thereafter the maker is estopped to raise the defense of want of consideration. (*Thompson v. Board of Supervisors,* 40 Ill. 379; *Beatty v. Western College, supra; Trustees of Griswold v. Peoria University,* 26 Ill. 41, and *Whitsitt v. Trustees Presbyterian Church,* 110 Ill. 125.)

It is claimed by appellee that it advanced money, relying upon the good faith and credit of this pledge and in anticipation of its payment. We have examined the record fully and subjoin all of the testimony upon that subject. A. M. Wells testified that he was a minister of the Methodist Episcopal Church and resided at Decatur. "Annual conferences are authorized to establish and maintain investment funds; Preachers' Aid Societies; and organizations and funds of similar character under such names, plans, rules and regulations as they may determine, the income from which shall be applied to the support of Conference Claimants. It is recommended that each Annual Conference provide an incorporated Board to administer its permanent funds. . . . That provision was in the Discipline in the month of June, 1923, and has continued until the present time. Preachers' Aid Society of the Illinois Annual Conference of the Methodist Episcopal Church is a corporation of Illinois. . . .

"We have a record to show it which is the Journal and year book of the Illinois Annual Conference for 1929. It appears on page 337. I am a member of the Illinois Annual Conference and attend sessions and have been doing that since 1897. The Journal and Year Book is the official Year Book. There is no other printed record. It is certified on page 296. The official certification is as follows: 'We hereby certify that the foregoing together with all reports, is a correct record of the proceedings of the One Hundred and Sixth Session of the Illinois Annual Conference of the Methodist

Episcopal Church, held in Decatur, September 17th to 23rd, 1929, and was adopted as its official Journal. Edgar Blake, President. George Davis, Secretary.'

"To my knowledge there is no other record except that and the printed counterparts of it. . . . Referring to Conference Claimants Fund on page 337, the title is 'Conference Action Concerning the Preachers' Aid Society,' and is as follows:

". . . 'Therefore, Be It Resolved: That the Preachers' Aid Society of the Illinois Annual Conference of the Methodist Episcopal Church, a corporation not for pecuniary profit, organized and authorized to exercise its corporate powers by virtue of the laws of the State of Illinois, be and it is hereby designated as the incorporated Board and the organization to administer the permanent funds of this. Conference set out and referred to in the paragraph of the Discipline first above mentioned;

" 'Be it Further Resolved: That any such permanent funds of this Conference which may have been heretofore entrusted to said corporation for the uses and purposes above stated and referred to, are hereby declared to have been so entrusted with and by the consent of this Conference and the several members thereof; and the delivery of such funds, for such uses and purposes is, by this Resolution ratified and con-. firmed.

" 'W. D. Fairchild
" 'H. W. McPherson
" 'A. M. Wells.'

"I am the Executive Secretary of the Preachers' Aid Society and was connected with it in 1923. During the Bi-Conference movement of that year I think I was on the Board of Directors. The Preachers' Aid Society gave funds toward the expenses of the Illinois Bi-Conference Movement, I think about $26,000. The contribution was made at the request of the Bi-Confer-

ence Movement and was a proportion of the expense allotted to the Preachers' Aid Society. We have a record of the time and of the amounts contributed. I think the record is on the table. I have here two or three indications of drafts on us· for different amounts and receipts from the treasurer of the Bi-Conference Movement. These papers I had obtained from the files in the office of the Preachers' Aid Society of which I have been secretary since 1928. Rev. H. C. Gibbs preceded me as secretary and he turned over the records of the office to me. I am now the official custodian of same. The papers I have here were turned over to me by Rev. Gibbs and are part of the files and records of the office. They have been there since I have been Secretary of the corporation. Apart from the papers I have some personal recollection of the payment made by the Bi-Conference Movement to the Preachers' Aid Society. I made a contribution to the Bi-Conference Movement myself.

"I first saw the note of Mrs. McVay when I became Executive Secretary in 1928. It was in my safe under my custody and control and I have custody and control of other· pledges made. I do not now have all the pledges as some have been paid but I still have some unpaid pledges. I know a number of pledges have been paid. I was a member of the Executive Committee of the Bi-Conference Movement and that committee had a meeting after the campaign closed. The meeting was held at Peoria, Illinois, and it took some action with reference to the pledges made in the campaign. Dr. Harry B. Lewis was Secretary and W. E. Shaw, Dr. McCarty and Dr. Parker were among those present at the meeting."

Cross-Examination.

"The Year Book of the Illinois Annual Conference from which I read is not the original record but a printed copy of it. I have not seen the original record

and never compared the printed copy with the original but I saw the paper in the Secretary's hands and heard him read it. The Certificate referred to appears on page 296 of the Year Book and the portion which I read into the record appears on page 337. The part I read is a part of the report adopted at the meeting. The reports are printed following the Journal and not in the body of the Journal itself, but the action is referred to in the Journal. I think there is something to identify this resolution as a report. I am a member of the Preachers' Aid Society which is the plaintiff.''

''Mr. Real: As to this witness, I desire to make a motion to exclude all of his testimony on the ground that he is a member of the corporation that is the plaintiff in the suit and I don't believe a competent witness.

''Of my own knowledge I know that we were called on three or four times to make certain payments to the cost of the campaign. I think there was one demand for $400 and one for $1,400. I don't remember the dates they were made.''

Re-Direct Examination.

''The Preachers' Aid Society does not issue capital stock or pay dividends or profits. The membership consists of members of the Illinois Annual Conference. All the preachers of the Methodist Church in this Conference are beneficiaries under certain conditions, by order of the Conference and they become beneficiaries upon retirement. I am still active. If a minister is transferred he formerly lost his right to aid from the Conference from which he was transferred but in 1929 this rule was changed and he now receives aid for the years he spent in the Conference although subsequently he may have been transferred therefrom.

''Q. After receiving the pledges from the Bi-Conference Movement, was there any action taken with

reference to the amount for the individual retired minister?

"A. We have continued to work with an eye to increasing from time to time and have been able to maintain the work because of the fund received at that time.

"The pledges were used to maintain what had been done formerly, by way of paying the retired ministers. If the amount contributed exceeded the amount sought to be raised for any purpose, the excess was used for that purpose, but in this case it did not exceed the amount sought to be raised.

"Q. I will ask you to state if you know whether the designated pledges were equal to or in excess of the proportionate amount of the Conference Claimants?

"A. It was not equal to it. I was a member of the Committee that made the distribution.

"If there was any difference, it was made up by the general drive, and the organization received designated and undesignated pledges. I remember of my own personal knowledge when the action shown on page 337 of the Year Book was taken and that is a true and correct account of it."

All of the foregoing was submitted under objections.

The Bi-Conference Movement is fully explained by appellees as follows: "This was essentially a money raising campaign inaugurated by the joint action of the Central Illinois Conference and the Illinois Annual Conference of the Methodist Episcopal Church. This campaign or movement, as it is interchangeably called, set up its own personnel and machinery for conducting this campaign. However, this Bi-Conference Movement was not directly connected with any organization save and except the two Conferences which sponsored it."

It was to this voluntary organization as "a money raising campaign" that the $26,000 was contributed, as testified to by the witness Wells. There is no testi-

mony as to the expenditure of any other item or thing in this record for the benefit of conference claimants or for the purposes for which this gift purported to be made, and we cannot hold this item as an advancement made or an expense of the trust incurred.

It was held in *Augustine v. Trustees of Methodist Episcopal Society, supra,* in this court:

"It is contended by appellees that the labors of Brown as pastor of the church in securing subscriptions enough to carry out the project constituted a sufficient consideration to support the promise for the subscription of the Augustines, and that therefore there could be no revocation after subscriptions to the amount of $5,000 had been obtained. Brown, it is urged, spent time and labor which belonged to the church, while he was upon an annual salary, and as the required $5,000 was all subscribed before the interview mentioned the attempted revocation came too late. In support of that contention the case of *Kentucky Baptist Education Society v. Carter,* 72 Ill. 247, is cited. We do not understand that case as going to the extent urged by counsel; but if it did, the latest expressions of our Supreme Court, as contained in the cases cited above, from the 93rd and 96th Illinois Reports, show a clear departure from it."

All of the witnesses for appellees were beneficiaries under the fund to which the note in question purported to be a subscription. They were therefore incompetent to testify in this case (Cahill's St. ch. 51, ¶ 2; section 2, chapter 51, Smith-Hurd Rev. Stat.; *Cronin v. Supreme Council Royal League,* 199 Ill. 228), and proper objections were made to their testimony.

Appellees presented another note for $10,000 of similar form, executed by Effie C. McVay. She was 80 years of age when she died. There was quite a controversy in the testimony as to which of these notes she intended to leave to this charity, if she intended to

leave either. She left an estate of about $5,000. She left a will executed November 14, 1928, giving all of her estate to her relatives.

It is the opinion of this court from the record that there was no consideration for the instrument in question and the judgment of the circuit court of Cumberland county is reversed.

*Reversed.*