Edward H. Conant et al., Trustees Under the Last Will and Testament of Oscar T. Tamm, Deceased, Appellees, v. Carolyn VdB. Lansden, Executrix of Last Will and Testament of David S. Lansden, Deceased, Appellant.

People of State of Illinois ex rel. George F. Barrett, Attorney General, Intervening Petitioner, v. Carolyn VdB. Lansden, Individually and as Executrix of Last Will and Testament of David S. Lansden, Deceased, Defendant.

Term No. 50F1.

Heard in this court at the May term, 1950. Opinion filed June 15, 1950. Modified opinion filed and rehearing denied September 27, 1950. Released for publication November 2, 1950.

GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, and DAVID V. LANSDEN, of Cairo, for certain appellant; MONTGOMERY S. WINNING, of Springfield, of counsel.

DOROTHY WILBOURN, of Cairo, and JOE CRAIN, of Mound City, for cross-appellants.

IVAN A. ELLIOTT, Attorney General, of Springfield, for appellee.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

Oscar T. Tamm died in 1913, a resident of Alexander county, Illinois, and his will was probated in said county the same year, by which there was created a trust, having the ultimate objective of constructing and maintaining good roads in Alexander county.

The will appointed three trustees, with provisions for successors, and changes occurred in the ensuing years. One of the original trustees was David S.

Lansden who served as such trustee from 1913 until his death in 1944, and he appears to have been the active and directing officer of the trust. The trust was managed privately for some thirty years, without court supervision.

After the death of David S. Lansden, in 1944, three individuals, describing themselves as taxpayers of the county, petitioned the circuit court to fill vacancies in the trustees, which was done, and the acting trustees thereafter were Edward H. Conant, Alonzo Mathis and Edwin H. Bryden. They filed suit against the estate of David S. Lansden, praying for an accounting of the trust, and are designated herein as plaintiffs appellees. The nominal defendant appellant is Carolyn VdB. Lansden, executrix of the last will and testament of David S. Lansden, deceased. She died during the pendency of the suit and Robert L. Lansden was appointed administrator *de bonis non* with will annexed, and was substituted as defendant herein, without change in title of the case.

The attorney general of the State of Illinois was permitted by the court to intervene in the suit, on the ground a charitable trust was involved, and he is designated intervening petitioner appellee.

The litigation became somewhat involved and complicated. Considerable oral testimony was heard before a master in chancery, and there were more than 400 documents offered in evidence, besides the several account books of the trust with some 5000 entries made over a period of three decades. The abstract filed on this appeal consists of nearly 600 pages, of which 132 pages set forth the pleadings and orders, complaints, answers, counterclaims, motions, countermoves, objections, motions to strike objections, etc.

The chancellor heard and disposed of numerous objections to the report filed in behalf of the trustee, to the report of the master, and to rulings on evidence,

491

etc., and on March 19, 1949, entered a final decree from which this appeal was taken. That decree found against the plaintiffs upon most of the issues, approved the fees charged by the various trustees, and allowed to the estate of David S. Lansden the sum of $12,000 for services rendered by him over a period of about 19 years, for which he had received no compensation.

The decree also found that, in two transactions handled by David S. Lansden as trustee, he had made improper and illegal investments, resulting in loss to the trust, which losses were surcharged against the defendant estate, with interest from their several dates at the rate of five per cent per annum. Due to the long period of time involved, the addition of interest more than doubled the amount of the original losses. The aggregate of the surcharges with accumulated interest, after allowing credit for the $12,000 fee, was the sum of $66,732.92 and the defendant estate was ordered to pay that amount in due course of administration. The defendant has perfected this appeal, and the plaintiffs cross appeal.

From the evidence, we find the following facts pertinent to the issues:

Oscar T. Tamm was a very active business man with extensive property holdings. When he died in 1913, he left very little in liquid assets, and the obligations against his estate aggregated about $100,000. But he owned a large amount of real estate, including numerous tracts of rural land, some of it having small value, being cut over timber land; but there were also many items of urban real estate of various kinds; and he was also engaged in several businesses. One of these was a general store in the Village of Tamms, hereafter further described.

David S. Lansden was executor of the Tamm will as well as a trustee. By virtue of their broad powers as trustees, he and his associates carried on the Tamm

business affairs, cleared lands, had various parcels share cropped, ran the store, collected his assets, paid his debts, and gradually sold off the real estate. A book was kept in which were recorded the details of all the numerous sales, and no question has been raised as to their nature or the adequacy of prices. Receipts and disbursements were recorded in journals kept by the trust.

During the first years, while the debts were being paid, there was little available for road construction. In about six years, all the debts were paid. From 1919 on, the trust accumulated some funds, and more expenditures were made on roads, though the amount never reached large proportions. The orderly liquidation of assets undoubtedly made the trust possible; otherwise it would have had little or nothing to justify the present litigation.

The services of the trustees appear to have been diligent, essential, and valuable to the trust. So far as the services are concerned, the amounts deducted by the trustees as their compensation, appear reasonable. And, according to the evidence, the last allowance of $12,000 includes reimbursement for expenses in the management of the trust, as well as compensation for personal services, over an extended period of years.

The general store business, above mentioned, was incorporated in 1907 under the name of Tamms Mercantile Company. The original subscribers for shares were listed as Oscar T. Tamm, 97 shares, and one share each to Seth W. Morton, Lee B. Davis and David S. Lansden. The latter two (who later became trustees when Tamm died) were designated officers of the company. Apparently Mr. Davis later acquired some additional shares from Tamm, but it does not appear that Mr. Lansden ever owned more than one share, nor even that the one had ever been issued, or any dividends paid on it.

493

After Tamm's death, the trustees operated the store at a substantial profit to the trust for four or five years. Then a depression set in affecting rural areas severely, and in 1919 and 1920 business in rural areas was very bad. In addition to the general depression (which followed the inflationary period of World War I) the rapid extension of paved highways was highly detrimental to country stores. The Tamms company was several times in arrears on its rent to the trust (which owned the building) and after 1921 ceased paying rent altogether. The business was closed out in 1926.

Notwithstanding the precarious financial condition of the business in the early twenties, the trustees loaned it $4,100 on November 29, 1922; and $4,198.52 on February 16, 1925. The account books show the cash disbursed on these loans, and on the latter date show the trustees borrowed the same amount from a bank on the same day, to make the loan. In 1927, after the company had failed, the trustees signed notes for $13,100 to the bank, in behalf of the defunct store. The books do not show this disbursed about this time, which tends to indicate these were renewals, but the dates of prior notes are undisclosed, nor is it shown whether the trust was liable thereon prior to 1927.

Evidently the trust had no security for these loans and made no recoveries thereon. The court surcharged the defendant estate with these amounts as of their indicated dates. The trust accounts indicate various disbursements to apply on the $13,100 but the total amount so paid is disputed by the parties. Defendant's counsel assert some of the payments pointed out by plaintiffs were on other notes. Although the accounts generally contain adequate data, we have found them insufficient as to these items, and find the precise amount applied on the $13,100 cannot be determined from the books and records in evidence.

494

The trustees also made loans to Denison-Gholson Dry Goods Company, and plaintiffs charge that Lansden was personally interested in this company. We find no competent evidence to establish that he was a stockholder therein, and there is absolutely nothing which could be said to indicate that he ever received anything, either directly or indirectly, from this company for himself. Why these loans were made remains a matter of conjecture.

The account books show that $20,000 was loaned to this company in 1922 on four notes of $5,000 each, due in 90 days. None was paid at maturity, although two were paid about three months late. The other two were never paid, except that interest was paid for a time. Yet, an additional $5,000 was loaned the same company in 1924 when it was already two years delinquent on $10,000. The $15,000 was never recovered by the trust, and the court surcharged this amount to defendant as of the several dates to which interest was paid by the company.

Upon this appeal, counsel for the defendant estate contend that the trustees have acted in all respects within the scope of authority specifically conferred upon them by the trust instrument, so that there is no basis for any surcharges. However, it is further contended that the plaintiffs and the intervening petitoner, in objecting to certain items of the account, made specific charges that David S. Lansden had been guilty of self-dealing in respect to the items surcharged, that they had the burden of proving these charges, that the evidence fails to establish them; therefore, it is claimed the court erred in failing to follow the rule that a party "cannot have relief under proofs without allegations, nor under allegations without proof."

Another argument of appellants is that there are no duly constituted trustees of the Tamm trust, that the purported appointment of plaintiffs was null and

■■■■■■■■

■■■■■■■■

void, and therefore the whole of these proceedings should be declared *coram non judice*.

It is contended that the court had no authority to ratify a void appointment of trustees, that the trustees were appointed *ex parte* without notice to anyone, and that the three individuals who petitioned for such appointment had no sufficient interest in the trust to justify any standing in court. If, on the contrary, they do have an interest, then it is contended, all the testimony for the plaintiffs should be stricken, for the reason that the witnesses were incompetent under the provisions of section 2 of the Evidence Act [Ill. Rev. Stat. ch. 51, par. 2; Jones Ill. Stats. Ann. 107.068], which is the peculiar rule in our law of evidence, sometimes referred to as the Dead Man's Act.

A number of other points are raised, perhaps the oddest being the charge that the plaintiffs (trustees) do not come into equity with clean hands, for the reason that the record discloses the court has approved their retaining counsel on a contingent fee basis. This, it is said, shows they are acting adversely to their duties and obligations as trustees.

The plaintiffs appellees and the attorney general, as intervening petitioner appellee, have presented their arguments designed to meet the various points raised by appellants, and in addition, the plaintiffs appellees have presented a cross appeal charging that David S. Lansden as trustee was guilty of such misconduct and bad faith that he should be denied all compensation, and all the former trustees should have had their fees disallowed; also that a number of additional surcharges should have been made. Their claims contemplate a very large increase in the aggregate amount of the surcharge.

The principal grounds urged for reversal are here considered. First, as to the authority of the trustees, we find it true that the will gave them very broad

powers, although there were some limitations. They were authorized to "manage, use and conduct all of my property, business and affairs in such manner as will, in their judgment, yield the best and safest income, interest and profits, so far as the objects of the trust hereby created will permit." They were also given power to invest and reinvest, from time to time, "in such manner and upon such terms and conditions as in their judgment will best promote the objects of the trust."

The powers thus given are clearly sufficient to authorize continuance of the store business, and to make investments, but the "objects of the trust" are twice mentioned. It was NOT an object of the trust to set up an invested fund and use the income only. On the contrary, the will specifically directed the expenditure of the principal or corpus, and as to this there follows these words "and I desire that they do this with such expedition as will complete the work of constructing good roads in the different parts of the county at as early a date as the character of the work and the nature of this trust will permit."

██ Words conferring upon a trustee full power to make investments in such manner as to him shall seem expedient, have been construed to be enabling words, giving the trustee power to deal fully and expeditiously with the estate, but not relieving him from the obligation to exercise sound judgment and reasonable and prudent discretion. *Merchants Loan & Trust Co. v. Northern Trust Co.*, 250 Ill. 86.

In the Restatement of the Law of Trusts, sec. 227, it is said that discretion conferred upon a trustee presents a question of *interpretation,* whether and to what extent, the settlor intended to enlarge the scope of permissible investments. If the trustee is authorized to make investments "in his discretion" this does not ordinarily permit investments other than those a prudent man would make.

497

In this case the questioned loans were not made in a period of prosperity and optimism, and rendered uncollectible by a later depression, hence this is not a matter of "hindsight." Here the evidence discloses that these loans were made without security, when borrowers of this type were in financial difficulties; the trustees were under no compulsion to find investments for the corpus; and they made the loans when they knew, or in the exercise of ordinary prudence, should have known, the investments were hazardous and wholly unsuitable for trust funds. The discretion conferred upon them cannot be construed to authorize such action, and they must be held personally liable for the loss resulting therefrom.

██ Upon the next point, we agree with appellant, that the charge of "self-dealing" made against David S. Lansden is not sustained by the evidence, and this will be further mentioned in connection with the cross appeal. However, the failure of proof upon this point did not deprive the court of the right to surcharge the trustee with losses on improper investments. Authorities cited by appellant on the sufficiency of pleadings are not in point. This was a simple complaint for accounting and the court properly required an account to be presented. When this was done, objections were made to certain items as being improper investments, the proof sustained the points made in this respect, but not the further point that they were made in bad faith, as self-dealing. The latter point had a bearing upon the right to compensation, and the possibility of charging compound interest. Upon the evidence, the court properly surcharged the losses, though refusing to deny compensation, or to charge compound interest.

██ As to the status of the plaintiffs as trustees, it is axiomatic that a trust will not be permitted to fail for want of a trustee, and when all parties were duly represented in court, the appointments were

ratified by judicial decree, which removed any possible doubt as to the authority of the plaintiffs. *Pease v. Kendall*, 391 Ill. 193, 198.

██ ██ As to competency of plaintiffs' witnesses, it appears the court sustained the objection as to the actual parties to the suit, but denied it as to persons not parties but who were citizens and taxpayers in Alexander county. These persons would be incompetent if they came within the description of a "person directly interested in the event (of the suit)." Chapter 51, par. 2, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 107.068]. What constitutes a direct interest is often a question of some difficulty. It has been held that stockholders of a corporation have such an interest in its affairs that they may be barred under this section. But the members of a church are not directly interested, merely because their church has a property interest in the controversy. *Adams v. First M. E. Church of Irving Park*, 251 Ill. 268. A person entitled to cash benefits from a charitable trust has a direct interest therein. *Cutwright v. Preachers' Aid Society*, 271 Ill. App. 168. In our opinion, where a trust merely provides for some public improvement in a given locality, the incidental benefit to citizens and taxpayers therein is too remote to be called a "direct interest" in the suit involving such trust. *Walker v. Struthers*, 273 Ill. 387. Accordingly, the court's ruling that the witnesses were competent is sustained.

Now, upon turning to the cross appeal, we shall first comment upon the burden of proof, a point argued by all parties herein. Appellees have cited and quoted from several authorities, some of which are here set forth:

*Nonnast v. Northern Trust Co.*, 374 Ill. 248: "In Perry on Trusts and Trustees, 7th Ed. p. 1397, it is said: 'A trustee or executor is bound to keep clear, distinct, and accurate accounts. If he does not, all

presumptions are against him, and all obscurities and doubts are to be taken adversely to him. (The burden of proof is upon a trustee to show that the charges or expense for which he claims credit upon an accounting were proper disbursements.)' "

*In re Claim of Crimp v. First Union Trust & Savings Bank,* 352 Ill. 93, 102: "Where there has been a negligent failure to keep trust accounts all presumptions will be against the trustee upon a settlement, obscurities and doubts being resolved adversely to him."

Bogert on Trusts and Trustees, vol. 4, part 2, page 328, sec. 971. "If he makes out a prima facie case for credit an objecting beneficiary will have the burden of introducing evidence and overcoming this case. It will then be a question of fact for the court as to whether the trustee has sustained his claim by the preponderance of the evidence."

In many of the cases against trustees, the difficulty has arisen through the failure of the trustee to keep, or to present adequate records of his acts. Here, when the court ordered an accounting, a complete book account of contemporaneous entries covering the entire period of more than thirty years, was presented. By agreement, this was treated as a report and objections were filed to various items, evidence was taken thereon, and the court made its ruling therefrom. Obviously, the authorities above cited are not entirely applicable. If a trustee presents complete accounts, but is further required to go back over many years and show by extrinsic evidence that each purchaser from the trust paid the exact amount recorded, and every purchase made by the trust was actually delivered, was necessary to the trust, and was used by it, the resulting burden would be so onerous, no one could, as a practical matter, undertake such superhuman responsibility.

██ In our opinion the true rule is this: where the trustee keeps and presents a complete account of his

acts, a party objecting to any item has the burden of going forward with evidence to substantiate the objection. If competent evidence is produced which establishes the inaccuracy or illegality of any items, or renders them doubtful and obscure, then the burden of proof is upon the trustee to establish their validity, and it becomes a question of fact whether he has sustained his claim by a preponderance of the evidence.

 The evidence in the record supports the trustees account in other respects, but establishes the illegality of the items surcharged against him, except possibly the Tamms Company notes for $13,100. There is evidence of disbursements on this item in the total sum of $15,583.10. The burden of proof was upon the trustee to remove any doubts or obscurities in this respect, and this was not done. The court adopted a feasible method of fixing liability, and the appellants have not shown, or even attempted to show, a better method, or that any other method would produce a substantially different result, therefore the order must be affirmed, upon this as well as the other surcharges.

Upon the question of ''self-dealing'' counsel cite a list of cases in which we found nothing bearing upon the facts before us. The citations range from the fraudulent acts of trustees who have deliberately set out to milk the trust, or destroy it, to the simpler and more common cases, where a trustee has used his office to prefer himself in the collection of private debts over his duty to the trust, and cases where the trustee has sold property to the trust for his private gain, or bought from it for his personal advantage. All of these come under the classification either of bad faith, or self-dealing. No such facts are present in this record.

· The appellees objection reduces itself to this: (1) Lansden owned some stock in the same corporation in which the testator had a substantial interest. (2) Lansden was an officer of the corporation in which

501

the testator had a controlling interest when he died. (3) The trustees paid themselves compensation for their own personal services.

 As to (1), there is no duty upon a trustee to dispose of stock he owns in a corporation, merely because he finds similar stock among the assets of the trust. (2) It is a common situation, for a testator who owns what he deems a good business, to include it in a trust and to appoint as one of the trustees, an officer or employee who is familiar with the business. His reasons are too patent to require comment. Mr. Tamm chose among his trustees, two men who had been officers of the company since it was originally incorporated. It would be a strange rule of law to hold that the trustees were guilty of bad faith, self-dealing, or other improper conduct if they failed to resign their corporate positions, and thus discontinue the very reason for their selection. There is no such rule of law. And, if they drew salaries as such corporate officers, in reasonable amounts, they would not be obliged to turn such amounts over to the trust. *Kubin v. Chicago Title & Trust Co.*, 307 Ill. App. 12, 23.

The facts in this case are not comparable to a case where a trustee owns or operates a separate business of his own, and makes loans from the trust to such company for his own benefit. The distinction between the case at bar and some of the cases cited by appellees is purely factual, and we find no real problem of law involved.

 As to (3), the deductions for compensation, it is the law of this state that a trustee is entitled to reasonable compensation for services rendered. Chapter 148, par. 31, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 135.18]. The fact that charges were made at regular intervals over a term of years, and payment therefor made, raises no presumption of bad faith or self-dealing. We are not impressed by the device of adding

together all the charges made over a long time, and presenting the total to the court as a large amount.

█ In our opinion, the evidence indicates that the trustee, Lansden, was not guilty of bad faith or self-dealing, and was entitled to compensation. It is true that he is responsible for two sets of bad investments, but it is not an inflexible rule that this forfeits all right to compensation, and the court has rectified this situation by surcharging the full amount of the loss, plus interest at five per cent per annum, which is full restoration to the trust. Where this has been done, the errors thus corrected need not deprive the trustee of his fair compensation, where he has been diligent in other particulars, for that would be doubling the penalty beyond the needs of justice. For cases to this effect, see 110 A. L. R. 577.

There are a considerable number of other points raised and argued before this court. We have considered all of them, but limitations of space preclude covering all of them in this opinion. We have presented only those which might be of general interest, although other points raised were by no means insignificant. We have arrived at the conclusion that the proceedings and decree are free from reversible error.

The decree of the circuit court is affirmed.

*Decree affirmed.*

CULBERTSON and BARDENS, JJ., concur.

### ON REHEARING

The petition for rehearing filed herein by the defendant appellant, among other things, presents an accounting (prepared with the assistance of an auditing firm) of alleged disbursements on the Tamm's notes of $13,100. By a system of proration of parts of certain payments to apply on these notes and by picking out all of the payments from the books and computing interest on each item from its date instead of from the

■■■■■■■■

■■■■■■■■

date of the note, a substantial reduction is shown in accumulated interest. This involves a number of assumptions as well as computations, all of which may be justifiable. No such theory was presented in the trial court for consideration and it cannot be considered in this court when presented for the first time on petition for rehearing.