Orville B. Gorin, et al., Plaintiffs, v. James M. Mc-
Farland, et al., Defendants.
R. Wayne Gill, et al., Plaintiffs-Appellees, v. Charles
H. Ruedi, et al., Defendants-Appellants.
Charles H. Ruedi, et al., Plaintiffs-Appellants, v. R.
Wayne Gill, et al., Defendants-Appellants.

Gen. Nos. 10,801, 10,812.

Fourth District.

March 16, 1967.

 ▪ 

Harris & Harris, of Lincoln, and Lee Boland, of Decatur, for appellants.

Downing, Smith, Jorgensen & Uhl, of Decatur (Elbert S. Smith, of counsel), for appellees.

HANNAH, J.

These are two separate and distinct cases involving the same parties, both cases arising out of the administration of a charitable trust created by the Last Will of James Millikin, deceased. The parties in both cases are the five successor trustees of said trust; namely, R. Wayne Gill, Jesse W. Patterson, William G. Traver, Lee Boland and Charles H. Ruedi. Both cases involve a dispute between the trustees, R. Wayne Gill, Jesse W. Patterson and William G. Traver on the one side as opposed to Lee Boland and Charles H. Ruedi.

By his Last Will, James Millikin, who died in 1909, created two trusts, one private and the other educational or charitable. It provided for five trustees to administer the trusts. The private trust was fulfilled and terminated in 1941. The charitable trust was created for the use and benefit of two departments of the James Millikin University, the departments being styled as "Decatur College and Industrial School" and "Lincoln College". The terms of the trust are unimportant to this case, there being no question as to the manner of its administration.

Both suits are filed in the trust estate proceedings. Two questions are presented. The first case, No. 10801,

is entitled R. Wayne Gill, Jesse W. Patterson and William G. Traver, trustee plaintiffs, against Lee Boland and Charles H. Ruedi, trustee defendants. All parties are the duly appointed and qualified successor trustees of the charitable trust. The plaintiffs filed their complaint seeking a declaratory judgment determining that the powers of the trustees of the educational or charitable trust might be exercised by majority vote as distinguished from unanimous agreement or decision. This is contrary to the position of the defendants, they contending they must be exercised by unanimous decision. The Will contained no provisions covering this question.

The second case, No. 10,812, involves the approval of the 1965 annual report of the trustees, and the allowance of compensation to them for their services in administering the trust. The dispute here lies in the allowability of fees and expenses to the trustees of a charitable trust. Trustees R. Wayne Gill, Jesse W. Patterson and William G. Traver contend they are not allowable, while trustees Lee Boland and Charles H. Ruedi claim they are allowable.

The two cases have been consolidated in this court because the parties are the same and governed by the same evidence. No oral evidence was heard in either case, and the only material documentary evidence is the Millikin Will and Codicil, and a certified copy of a circuit court decree entered in the trust estate on March 23, 1916, wherein none of the present trustees were parties. This 1916 decree relates only to the second case.

We shall first consider Case No. 10,801, being the complaint seeking a declaratory judgment that the powers of the trustees may be exercised by a majority vote and need not be exercised by unanimous approval. Since the decision in this case must hinge upon procedural matters determining the power of the trial court to enter its final decree, we must review the course of plead-

ing and procedure followed. Following legal process might be compared to traveling on a highway to a given destination, the destination in this case being the point at which the court is empowered to enter a final judgment or decree. The road is clearly marked by highway signs in the form of rules of procedure. There are no byroads or shortcuts to the ultimate destination. Our question is to determine whether the court ever reached that ultimate destination.

 The first cardinal rule of jurisprudence is that in every suit each party shall be accorded "due process." Fixed and specific procedure is provided by statute, rules of court and judicial decision as to the route to be followed which will assure each party that right of hearing. If these rules be not followed thereby denying that right, then the final decision of the court must, upon appeal, be reversed. The defendants contend they were denied the right to be heard. We are bound by what the record discloses.

On January 21, 1966, the three plaintiff trustees filed their complaint against the remaining two trustees, seeking a declaratory judgment that the powers of the trustees may be exercised by the will of the majority. They allege, in substance, that before the termination of the private trust it was considered necessary in the administration of the two trusts (private and charitable) that all trustees concur in all decisions arising in the course of the administration of the two trusts, but now that the private trust has been terminated (it was terminated in 1941) the powers of the trustees may be exercised by a majority decision. This question apparently now arises in this estate for the first time. Apparently from the date of the termination of the private trust in 1941 to the time of filing this action, the trustees had acted by unanimous agreement.

The complaint alleges that the defendant trustees contend that under the law the powers of the trustees

must be exercised by unanimous decision. This disagreement, it is alleged, casts a cloud upon the power and authority of the trustees to act. There are no allegations in the complaint of any present dispute over any present existing actual or contemplated acts of administration. But it is alleged that unless the dispute is determined it will work injury to the trust estate and its beneficiaries in the course of administration. On the same date, January 21, the plaintiffs also filed a motion asking an early hearing, to which was attached an affidavit alleging there was then an actual controversy involving the voting of 55% of the stock in the Millikin National Bank, said shares being assets of the trust estate.

On January 26, 1966, the defendants entered their special appearance to object to the jurisdiction of the court. This motion was never heard, and on February 23, they filed their motion to strike the plaintiffs' complaint for a declaratory judgment, alleging (1) that the complaint was insufficient in law to entitle the plaintiffs to a declaratory judgment, (2) that the petition did not allege an actual controversy pursuant to the requirements of Ill Rev Stats 1965, c 110, § 57.1, (3) that it sought only legal advice on procedural questions, and submitted a moot question, and that other adequate remedies were available. Thus there was presented a proper question as to the sufficiency of the complaint.

On March 1, plaintiffs filed a motion for a default against the defendants, or, in the alternative, to strike the defendants' motion to strike the original complaint. On March 7, all parties being present, a hearing, and the only hearing, was had and a judgment pronounced granting the relief prayed by the complaint.

In considering these questions, let us review the proceedings at the hearing on March 7, which was the only hearing had, as disclosed by the Report of Trial Proceedings. Here we find the court proceeding to a hear-

ing upon the merits of the complaint without first ruling upon defendants' motion to strike the complaint for its alleged insufficiency, and without ruling the defendants to answer, and without the formation of an issue. All this was against the remonstrance of the defendants. Without the formation of an issue the court proceeded to pronounce judgment granting the prayer of the complaint. "Due process" for the defendants was nonexistent. In the language of Burket v. Reliance Bank & Trust Co., 367 Ill 196, 11 NE2d 6, at page 9:

> ". . . It is of no avail if one be summoned to a court and the issues determined against him without the hearing and determination of questions of fact. . . ."

As disclosed by the Report of Trial Proceedings, on March 7, the plaintiffs opened the hearing with the introduction of record evidence, notwithstanding the defendants' motion had not been passed upon and the cause was not at issue. Upon plaintiffs' counsel's offer to call the plaintiffs as witnesses in support of their complaint the court stated, in substance, that this was not necessary as it deemed the complaint sufficient. Accordingly the plaintiffs offered no evidence in support of the allegation that there was an actual controversy, which is basic to the relief of a declaratory judgment, Ill Rev Stats 1965, c 110, § 57.1. The court then called upon defendants to proceed. Counsel for defendants then stated:

> "As I explained to the Court this morning, as I had understood, there would be a hearing upon the petition and motion. . . . I was not prepared to introduce any evidence."

After further comment defendants' counsel continued.

> "I don't know exactly what the Court may have as to a next step or procedure in the case, except possibly to obtain the law that the Court can con-

sider on these motions and on the general situation. If that is satisfactory, I will be glad, probably by tomorrow, if possible, to submit a brief on the propositions that are now material in the pleadings in the case, and reply to the brief submitted by Mr. Smith."

It therefore appears clear that defendants were seeking to be heard upon their motion to strike the plaintiffs' complaint and to have a ruling upon it. To all this the court replied:

"The Court: I propose to enter an order on this matter today."

Thereupon, without further hearing, according to the record, the court pronounced a judgment granting the relief prayed. All this was without an issue being formulated and without evidence. The written final decree was entered on May 10. The decree recites all the proceedings had, but in the inverse order of their occurrence. We are bound by the recitations of the signed decree.

Examining it, we find that paragraph 3 of the decree recites:

"The petitioners' motion to default the defendants Lee Boland and Charles H. Ruedi, or in the alternative to overrule the said defendants' motion to strike is denied."

The court in denying the plaintiffs' motion for default and also in denying their motion to strike defendants' motion to strike the complaint thereby determined the defendants' motion to strike the complaint to be sufficient in form and substance to raise a question of law as to the sufficiency of plaintiffs' complaint. It therefore became incumbent upon the court to determine the sufficiency of the complaint in the light of the requirements of Ill Rev Stats 1965, c 110, § 57.1. If the complaint was insufficient then that would terminate the case, unless there be necessary amendments. But the

trial court did not pass upon the motion, and the motion was not withdrawn and it still stands unanswered. It is not for this court to rule upon this motion to strike the complaint, that is the trial court's obligation.

Next, in paragraph 2 of the decree, we find the following:

"That the motion of Lee Boland and Charles H. Ruedi to strike the petition for declaratory judgment is sufficient to join the issues raised by the verified petition for declaratory judgment. . . . And said motion of the defendants may stand as an answer to the petition, and by the pleadings before the Court the Court is able to pass on the ultimate issues presented."

Here we find the court finding the defendants' motion to strike to be sufficient to join issues on the complaint, and thereby, upon its own motion, ordering defendants' motion to stand as their answer. All this was against the defendants' continuous and vigorous protest, they at all times insisting upon a hearing upon their motion. It is obvious this motion did not purport to be an answer to the complaint. It was not intended as such. It was for the defendants and not the court to decide the nature of their defenses, and to set them forth at a proper time and in proper manner. Various defenses might be conceivable. But the defendants were denied the right to plead them. In fact, that stage had not been reached.

After the court had upon its own motion ordered the defendants' motion to strike to stand as an answer, it inconsistently makes the following finding and order:

"That no answer being filed or tendered by the defendants, Lee Boland and Charles H. Ruedi explicitly denying the allegations contained in the verified petition for declaratory judgment filed herein, or in the alternative stating that said defendants have no knowledge of the matters contained in such alle-

gations, the allegations as set forth in said verified petition for the declaratory judgment are deemed to be admitted by the defendants."

The court having first denied the motion to default the defendants, and having ordered their motion to stand as an answer, which obviously it was not and could not by any stretch of the imagination be so deemed, now finds them in default for want of an answer. Then for want of answer the court finds they have admitted the allegations of the complaint. And all this takes place while the defendants are begging to be heard upon their motion to strike the complaint for its alleged insufficiency. Even had the court found the complaint sufficient, before it could proceed to judgment it would have to rule the defendants to answer, which was never done. At no time were the defendants ever accorded an opportunity to plead or offer evidence. How could it be said the defendants admitted the allegations of the complaint?

■ It is also to be noted that upon the day the decree was entered, March 10, the defendants filed written objections to the proposed decree, they having been furnished a copy. And here again they reasserted all their objections. Then again on April 7, they filed a post-trial motion asking that the decree be set aside and that they be heard on their motion to strike the complaint, and for an opportunity to be heard. But this motion was also denied. It is fundamental that "due process" be accorded every litigant. Not only must he be given notice, but be accorded the opportunity to be heard and to give evidence, Burket v. Reliance Bank & Trust Co., 367 Ill 196, 11 NE2d 6. Without this any judgment is for naught.

■ Likewise an issue must be formulated. This may be accomplished by appropriate pleading or default. This has always been the rule. Until an issue has been formed the court is powerless to enter a final judgment. Merriweather v. Gregory, 2 Scam (3 Ill) 50;

Clark v. People ex rel. Crane, 15 Ill 213; McKeon v. Mc-
Keon, 4 Ill App2d 515, 124 NE2d 564.

Here no issue was ever formulated. Whether there
was a good and sufficient complaint under Ill Rev Stats
1965, c 110, § 57.1 has never been determined. That ques-
tion still remains for the trial court to determine. This is
not presently a question for a court of review.

In the light of this record, we find the language used
in County Board of School Trustees v. Bendt, 30 Ill App
2d 329, 333, 174 NE2d 404, 406, most apropos:

> "There is an aura of suspicion surrounding this rec-
> ord that the judgment order of the trial court was
> entered without benefit of evidence. If so, the or-
> der was 'still born' and clearly violates the rule laid
> down in Topel v. Personal Loan and Savings Bank,
> 290 Ill App 558. . . ."

 Under this state of the record there can be no
doubt but that the defendants were denied their day in
court. All the guideposts and signs directing the route
of the highway to be followed to reach the ultimate des-
tination of decision were ignored. Under the condition of
this record the decree of the circuit court must be and
is set aside, and the cause is reversed and remanded to
the trial court for further proceedings beginning with
a hearing and ruling upon the defendants' motion to
strike the petition. If that motion be allowed, the suit
should be dismissed; if it should be overruled, then the
defendants should be ruled to answer or otherwise plead
within a reasonable time to be fixed by the court. Noth-
ing in this opinion shall be construed as indicating any
opinion upon the sufficiency of the complaint.

We now come to General No. 10,812, an appeal from
an order of the trial court denying compensation to the
trustees of a charitable trust created by the Last Will
and Testament of James Millikin, Deceased. This is the
same will and trust involved in the preceding case con-

409

solidated herewith. The Will contains no provision relative to the allowance of compensation to the trustees for their services in administering the trusts.

The annual report of the trustees for the year January 1, 1965, to December 31, 1965, was filed March 29, 1966. The report bears the names of the trustees Lee Boland, Charles H. Ruedi, R. Wayne Gill, J. W. Patterson and William G. Traver, purportedly signed by Lee Boland as their attorney, and verified by Charles H. Ruedi, one of the trustees. The report purports to be a full and complete report of the acts and doings of the trustees in the administration of a charitable trust, and is accompanied by a complete audit for that year. The correctness of the report and audit as to the administration of the trust is not questioned. The private trust created by the will was terminated in 1941, since which time only the charitable trust has been in operation.

Paragraph eight of the report sets forth the character of the services rendered by the respective trustees, except William G. Traver who had been recently appointed. The prayer of the report is that it be approved, and that the court fix and determine the several compensations to be allowed and paid to each of the trustees for their services rendered during the period covered by the report.

The only dispute relates to the allowance of compensation to the trustees. The will creating the trust is silent upon the question of the allowance of compensation to the trustees. On April 7, 1966, three of the trustees, R. Wayne Gill, J. W. Patterson and W. G. Traver, whom we shall refer to as the objectors, filed their written motion praying that paragraph 8 of the report and the prayer for the fixation and allowance of compensation to the trustees be stricken.

In support of this motion, the objectors assigned several grounds, some of which are not here urged. Those urged may be summarized as follows:

410

First, that by a decree of the circuit court entered in the Millikin Estate on March 23, 1916, it was adjudged that the trustees of the charitable trust created by the Millikin Will were not entitled to compensation for their services rendered in administering the trust. While the words "res judicata" are not used, it is in effect a plea of res judicata.

Second, that as a matter of law no trustee under the Will of James Millikin, deceased, is entitled to compensation for services rendered in 1965.

Third, that as a matter of law a trustee cannot deal with himself or make any contract binding upon the trust estate which would otherwise inure to the benefit of the trustee as an individual.

Fourth, that by the decree of the circuit court, entered March 10, 1966, it was there determined that the defendants had admitted as true the allegations of the petition in that case. By this objectors apparently seek to plead the decree in that case (10,801 hereinbefore reversed) as determinative of objectors' right, as a majority, to waive compensation for all trustees.

The trial court allowed the objectors' motion and struck paragraph 8 and the prayer for compensation from the report, and denied compensation. In the interest of clarity to this opinion we quote the material portions of the court's order or decree:

> "And the Court being well and sufficiently advised in the premises finds that the Circuit Court of Macon County on March 23, 1916, entered an order in this cause finding that the trust created by the eighth item of the will of James Millikin, deceased, as a public or charitable trust and that the Trustees of said trust were not entitled to any compensation for their services in administering said public or charitable trust, and the said counsel having not shown that said order has been rescinded, modified or reversed but on the other hand it was entered in

411

this cause, as to the nature of the trust now in dispute, and as to compensation of Trustees for services now in question.

"And the Court further finds that the majority of the Trustees move that the prayer for compensation to the Trustees be stricken from their current report and that such compensation be denied.

"It is ordered and adjudged by the Court . . . that the petitioners' motion to strike such portions of the Annual Report of the Trustees for the year 1965 as prays for compensation for services be granted; that compensation for services as Trustees of this charitable trust, be, and they are hereby denied; and that the Annual Report for 1965 is otherwise approved, as per order thereto filed as of this date."

We will consider the grounds assigned by objectors in support of their motion in the order we have stated them. Our first question is, was the decree of the Macon County circuit court entered March 23, 1916, res judicata of the question here presented? While neither the objectors nor the court use the words "res judicata," the effect of their allegation and the finding of the court is that of a plea of res judicata. Whether that decree, if erroneous in substance and conclusion would have been binding upon the circuit court in the instant case, need not be here decided. In any event, if it be erroneous, it is not binding upon a court of review. But did it have the necessary elements to render it a good plea of res judicata in the present case?

██ To operate as res judicata it must appear that the matter then in issue and adjudicated in 1916 was the same matter in issue here, and that the parties in each action were the same, or stood in the relation of privies in the same subject matter. The rule is stated in Hedlund v. Miner, 395 Ill 217, 69 NE2d 862, 868, in this language:

412

■■■■■■■■■■
■■■■■■■

". . . The doctrine of res judicata is that a point once adjudicated by a court of competent jurisdiction may be relied upon as conclusive upon the same matter, as between the parties or their privies. . . ."

■ This rule has been repeatedly announced by our courts. It is further the rule that the party pleading res judicata has the burden of establishing the like identity of the issues as well as the identity of the parties. Ray v. Starr, 351 Ill App 344, 115 NE2d 112.

■ What was the issue before the court in the decree of 1916? The only evidence presented upon this question is the 1916 decree itself. The issues necessary to that decree can only be ascertained from an examination of the pleadings, and they are not before us. We cannot be oblivious to the fact that upon occasions courts go beyond the issues presented to them for decision, and offer or make voluntary statements regarding the law on matters not then before them. Such volunteered expressions have been designated as obiter dictum. Whether there was actually a question as to the actual approval and allowance of requested fees to trustees for the administration of a charitable trust does not appear. The decree recites that it is based upon "certain portions of said amended bill of complaint and the amendments thereto, relating to the compensation of complainants as trustees under the Will of James Millikin, deceased, as set out in said demurrer." Neither the complaint nor the demurrer are before this court. However, it does appear, from the Will itself, that the private trust was created by paragraph 5 thereof, and the charitable trust by paragraph 8. It further appears that the charitable trust did not become operative until the termination of the private trust. The decree of the circuit court in the present case determines that the private trust was terminated in 1941, and it is so admitted. Accordingly, the charitable trust became active a period of 25 years after the decree of 1916. The question of the allowance

of compensation to trustees of the charitable trust could not have been before the court in 1916.

To be effective,

> "A motion based upon the plea of res judicata can be sustained only if the precise issue involved in the present suit was determined in a prior proceeding." Ray v. Starr, 351 Ill App 344, 349, 115 NE2d 112, 115.

██ Another requisite to sustain a plea of res judicata is that in the two suits the parties must be the same, or a relationship of privity in estate must exist between them. "Privity" is defined in Lang v. Metzger, 206 Ill 475, 69 NE 493, 498, as follows:

> "The term 'privity' denotes mutual or successive relationship to the same rights of property . . . and a 'privy in estate is a successor to the same estate, not to a different estate in the same property' ". . . .

Counsel for objectors state (appellees' brief p 12) that "no party to this appeal denies that the 1916 case and the instant case involve the same subject matter, i. e., James Millikin's testamentary trust . . ." and further state "the parties in the 1916 case were the trustees under the Will of James Millikin, deceased." From these facts counsel seeks to conclude that the *issues* and *parties* in the 1916 and 1966 cases are the same, and so thereby conclude that the doctrine of res judicata applies to the present case. This is an artful and ingenious, but deceptive and fallacious argument because it substitutes general facts instead of the specific premises necessary to reach the conclusion of res judicata. In effect the plaintiffs point out this erroneous reasoning.

██ It is true both cases arise out of the total Millikin testamentary trust, and the parties are trustees thereunder, but of separate and distinct trusts. The

414

basic premises necessary to reach the conclusion of res judicata are (1) that the *issues* must have been the same, and (2) the identity of the parties the same, or they stand in a relation of privity to each other. This sameness in relationship does not exist in the two cases. Assuming that the actual allowance of compensation to trustees was involved in the 1916 case, it was only in relation to a private trust, which involved the 1891 Act, and it was not affected by the 1913 amended Act. The charitable trust, while conceived, was not to be born into activity until 25 years later. A private trust and a charitable trust are separate and distinct entities. Objectors contend that the law as to compensation to trustees for administering the respective trusts is different. Admitting, as objectors do, that the private trust did not terminate until 1941, at which time the charitable trust first became operative, it becomes obvious that the allowance of compensation to trustees for administering the charitable trust was not before the court in 1916. Thus the necessary element of the sameness of issue, for a plea of res judicata is absent.

■ That the parties in 1916 and the parties in 1966 are not the same is obvious. It is admitted they are not the same individuals. It cannot be denied that the trustees in 1916 were acting in behalf of a private trust, while the parties in the instant case are acting in behalf of a charitable trust. We can see no privity of relationship between the trustees of 1916 and those of 1966. All the elements necessary to a plea of res judicata are absent.

Counsel for defendants urge that the allowance of compensation would in effect countenance "self-dealing" by the trustees with the subject matter of their trust. This argument is also fallacious in that the trustees do not claim any interest in the trust estate. Their claim has nothing to do with the performance of their duties in

the administering and handling of the trust in accordance with the provisions of the trust. Neither does the making of a claim constitute any contractual relation between them and the trust estate. Arnold v. Alden, 173 Ill 229, 50 NE 704. In making a claim for compensation they are not claiming any interest in the trust estate. In a sense the trustees are but employees of the founder of the trust, charged with a duty to execute the trust in accordance with the directions given by the founder. Theirs is a service rendered, and is in no sense a part of the trust itself.

 This right of a trustee to claim compensation for his services is personal to him. No other trustee can waive or assert that claim for him. The court alone determines the justness of the claim and its amount to be based upon the character of the services rendered. What the trustees in 1916 may have claimed, or waived, or what that court may have determined with reference to such claims, is not binding upon or of concern to the trustees in 1966. We find no privity existing between the present trustees and those trustees who were serving fifty years ago so far as compensation is concerned. Accordingly the 1916 decree lacks all of the elements necessary to invest it with the authority of res judicata, and objectors have failed to bear their burden of proof.

We now approach the question as to whether there was and is any law which authorizes or permits the allowance of compensation to trustees of a charitable trust for their services in administering such a trust, where trust is created by will or codicil, and where no provision is made regarding compensation to the trustees. The objectors claim there is no such law.

 Under the common law compensation to trustees, in the absence of specific provision therefor, was not allowable. This was based upon grounds of public

policy. It was considered that a trustee should execute the trust for the benefit of the beneficiary alone, and that the trustee should derive no profit by reason of the trust. In 1891 the legislature, in its wisdom, deemed that justice required the changing of this rule, and so enacted a statute entitled "An Act concerning compensation of trustees." Ill Rev Stats 1911, c 3, § 136, Hurd's, as follows:

> "Where a trustee or trustees shall hereafter act under any power or appointment given or created by any will, testament or codicil . . . except in case of trusts for charitable, religious or educational purposes, shall be contained no provision respecting the compensation to be allowed or paid such trustee or trustees, a reasonable compensation may be charged and allowed, demanded and collected therefor."

This Act came under consideration in Arnold v. Alden, 173 Ill 229, 50 NE 704, decided in 1908, where the allowance of compensation to the trustees of a private trust was upheld. The question of compensation to trustees of a charitable or educational trust was not there involved. However that case does contain some informative discussion of this statute, which we shall not repeat at length. But among other things it is there pointed out that the relation between the trustee and the creator of the trust is not one of contract. It was further pointed out, that while one who accepts an office to which no compensation is attached is presumed to undertake to serve gratuitously, and cannot recover anything upon an implied contract, still where such an office is wholly within the control of the legislature, it may, in the absence of constitutional prohibition, alter or change the compensation. The Supreme Court deemed this statute as coming within this doctrine. It accordingly held the trustee of

a private trust coming within the limitations of the statute, to be entitled to compensation for his services rendered after the passage of the Act.

The 1891 Act contained an exception to the allowance of compensation, stated in these words "except in cases of trusts for charitable, religious or educational purposes." Whether at a later time the legislature deemed this exception to be ambiguous, or whether they deemed it wise to limit the exception, we are unable to say. But the fact remains that in 1913 they amended the 1891 Act by adding thereto the following:

> "The exception in this Act, in regard to trusts for charitable, religious or educational purposes, is intended to apply only to trustees 'of charitable, religious or educational institutions, and *not to the trustees created by any will, testament or codicil.* The county court of the county where the will was admitted to probate or the circuit court of such county, in case such court shall take jurisdiction of a trust estate, may allow a reasonable fee to such trustee or trustees so created by will, testament or codicil.'" (Emphasis added.)

In 1965 this Act was again amended and reenacted to make it compatible with the Judicial Reform Act, but in all other particulars it remained the same. Much time is spent by objectors in argument concerning the 1913 Act. But this Act was superseded by the 1965 Act. It was under this 1965 Act these proceedings were initiated and not the 1913 Act.

 Accordingly we find there is specific statutory provision authorizing compensation to trustees of a charitable trust created by will or codicil where no provision is made in the instrument itself regarding compensation. The 1913 Act continued in force and application from its enactment until August 1965 when it was superseded by the 1965 Act. The latter Act is the 1913 Act amended

to conform with the Judicial Amendment. In Conant v. Lansden, 341 Ill App 488, 94 NE2d 594 (1950) there was a suit for accounting against trustees of a charitable trust, among other things seeking to have the trustees of a charitable trust account for fees they had received and taken for their services, as such trustees, we find this statement:

> "As to (3) the deductions for compensation, it is the law of this state that a trustee is entitled to reasonable compensation for services rendered. Ill Rev Stats ch 148, ¶ 31, (Jones Ill Stats Ann 135.18). The fact that charges were made at regular intervals over a term of years, and payment therefor made, raises no presumption of bad faith or self-dealing."

This case was later appealed to the Supreme Court, and while reversed upon other grounds, the right of trustees of a charitable trust to compensation under this Act was upheld. Conant v. Lansden, 409 Ill 149, 98 NE2d 773.

 The reason and intent for the amendment of 1913 to the original Act of 1891 seems apparent. The exception in the 1891 Act was in these words, "except in cases of trusts for charitable, religious or educational purposes," while the 1913 amendment declares this exception to now be limited to "trustees of charitable, religious or educational *institutions*," and thereby excluded from the 1891 exception trusts created by will or codicil. The Millikin University is an institution and has its own trustees. The charitable trust here is not an institution, but is created from a private estate. Obviously the legislature felt it was not just to permit a private founder of a trust to impose the obligation upon others to administer his estate gratuitously in the absence of his failure to make any provision relative to compensation for the services of his trustees. A trust will not be permitted to fail for want of a trustee, and if no method

419

of compensation be provided by the founder of the private trust, then the court would be in a position of compelling some one or more to act gratuitously. The duties in administering the trust might become very onerous. That the legislature may by amendment expand or restrict the application of a particular statute, so long as not violating constitutional limitations nor defeating the obligation of contract, seems clear.

Whether the objectors seek to raise a constitutional question by relying upon a finding in the 1916 decree that the 1913 Act was unconstitutional we do not know. A careful examination of the pleadings here fails to disclose any direct attack by the objectors upon the constitutionality of the 1913 Act, and certainly there has been no attack upon the constitutionality of the 1965 Act under which these proceedings were initiated. The constitutionality of a statute can only be raised by a direct attack in the lower court. The circuit court in the instant case did not purport to pass upon the question of the constitutionality of either the 1913 or 1965 Act.

As heretofore noted, the 1916 decree was offered only in support of what amounted to a plea of res judicata. The circuit court in the instant case likewise treated it as a matter of res judicata. It might also be noted that while the 1916 decree made a "finding" that the 1913 Act was unconstitutional, it entered no decretal order declaring it to be unconstitutional. Furthermore, as elsewhere noted, the 1913 amendment, which concerned only public, charitable and educational trusts, was not actually before the court in 1916, since the charitable trust did not become active until some 25 years later.

No recognition has ever been given to the 1916 decree. (See Conant v. Lansden, 341 Ill App 488, 94 NE2d 594; 409 Ill 149, 98 NE2d 773, decided in 1950.) In fact, the objectors and the circuit court for 25 years have accorded no consideration to this decree. Reference to the

audit, made part of the annual 1965 report, discloses that these same trustees (except Traver) claimed, were allowed and paid compensation for their services rendered in 1964. There was paid to objectors R. Wayne Gill and J. W. Patterson $2,000 each; to Roy M. Hamilton (Traver's predecessor) $1,750; to Lee Boland $4,000; and to Charles H. Ruedi $3,000. On oral argument before this court counsel for objectors stated that the trustees of this charitable trust had all claimed and received compensation since 1941, when the trust first became operative. They were bound by all lawful orders and decrees entered in this trust, and if the 1916 decree was one which is binding now, then it was binding for the 25 years between 1941 and 1965. Consistency on the part of the objectors would indicate as proper a proffer to return to the estate the fruits by them unlawfully gathered from the garden of their sacred trust. We find no such offer. Their inconsistency inspires but little weight to their contention.

With reference to the third ground, viz., that the allowance of compensation would be permitting the trustees to deal with themselves, and to make contracts with the estate, we find no merit therein. The answer to this contention is found in Arnold v. Alden, 173 Ill 229, supra. As we have pointed out the trustees are comparable to special employees, chosen and appointed to administer a trust in accordance with the directions of the founder. They claim no interest in the trust itself. They have no fixed rights to any definite amount of compensation. Neither is there any contractual relationship between them and the trust. It is the court who determines whether their services merit compensation, and the reasonable amount, if any. But they do have the right to make claim for reasonable compensation.

We now approach the fourth assigned ground, viz., whether under and by virtue of the decree of March 10, 1966, rendered in Case 10,801 consolidated herewith,

a majority of the trustees may determine that no compensation may be claimed or allowed to any or all of the trustees of this charitable trust. That decree has been set aside and reversed by this court, as hereinbefore set forth. Consequently it is eliminated as a valid ground to support either the objectors' contention or the court's order.

But directing our attention to this limited question as to the right of the majority trustees to waive the right of *all* trustees to compensation, it is our opinion they cannot do this. We have heretofore discussed the distinction between a claim for compensation and the determination of policies relating to the administration of the trust. In passing upon the want of power in a majority to waive claims for compensation we are not passing upon the power or right of a majority to determine policies in the administration of the trust. The two matters are distinct and unrelated. The latter question has been referred back to the trial court for determination.

The right to claim compensation for services rendered in performing the duties necessary to administer the trust, is personal to each trustee. He may waive his personal right to claim compensation, if he so desires, but he cannot waive the personal right of another. Referring to the compensation allowed for the year 1964, it will be observed the compensation allowed was in varying amounts, ranging from $1,750 to $4,000, obviously based upon the amount and character of services rendered. We are of the opinion a majority of the trustees cannot waive the right of other trustees to claim compensation.

For the reasons herein assigned, it is the opinion of the court that each trustee of this charitable trust is entitled to a reasonable compensation for his services rendered in administering this trust for the year 1965. The amount is a matter for determination by the trial

court in the light of all the facts, circumstances, and character of services rendered. The judgment and decree of the circuit court is reversed and set aside, and the cause remanded for further proceedings consistent with the opinion of this court.

No. 10,801—Reversed and remanded.

No. 10,812—Reversed and remanded.

TRAPP, P. J. and SMITH, J., concur.