(No. 25897.— )

OTTILIA SUESKE *et al.* Appellants, *vs.* FRANK SCHOFIELD, Exr., Appellee.

*Opinion filed April 10, 1941—Rehearing denied June 4, 1941.*

SHAW, J., dissenting.

COCHRANE & GEORGE, for appellants.

DAVID K. TONE, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Elmer F. Sueske died testate March 6, 1934, leaving him surviving his widow, Emma, his mother, Ottilia, his sister, Caroline C., and his brother, Walter Sueske. The testator had been engaged in the brass and copper business. In 1927, he, his sister Caroline Sueske and Frank Schofield incorporated the Sueske Brass & Copper Company. The capital stock of the company at the death of the testator was $150,000. There were 1500 shares of stock. The testator owned 1480 of these and Caroline Sueske and Frank Schofield each owned 10. Until his death, the decedent managed the business as his own, and it appears to have been vefy profitable. Approximately one month before his death Sueske made his will, which was admitted to probate April 16, 1934, and which named Frank Schofield executor and trustee. The estate of the testator consisted wholly of personalty, except for a summer home at Antioch, Illinois, about which latter no question is raised in this appeal.

The provisions of the will in controversy are sub-paragraphs (e), (f), (g) and (h) of the fifth paragraph. They deal with the gifts in trust of the stock in the Sueske Brass & Copper Company. The fifth paragraph includes twelve sub-paragraphs designated (a) to (l), inclusive. It bequeathes all the residue and remainder of the estate to appellee in trust. By sub-paragraphs (a) and (b) the trustee is to hold, manage, lease, care for and protect the trust estate with power to sell and convey any of the trust property, and to invest and reinvest the proceeds from time to time, without restriction, and to continue or dispose of the testator's business. Employees of the company and Walter C. Sueske are the beneficiaries of small trusts created in sub-paragraphs (c) and (d). By sub-paragraph (e) the trustee is directed to set apart 750 of the shares of stock, or the proceeds realized therefrom in case of sale or liquidation of the business, and pay the entire net income to the widow, Emma M. Sueske, during her life, and upon her death to convey the *corpus* to her descendants, if she has any, *per stirpes,* and in the event of her death leaving no descendants, to her lawful heirs. She was authorized to dispose, by will, of the share included in this sub-paragraph. In sub-paragraph (f) the trustee is directed to set apart 370 shares and pay the net income therefrom to Ottilia Sueske during her life. After her death, the income is to be paid to Caroline Sueske and on the latter's decease, the *corpus* "shall be conveyed * * * to my beloved wife, Emma M. Sueske, or if she be deceased, to her descendants, if she has any, * * * or if she has no descendants, then, to her lawful heirs." By sub-paragraph (g) the testator directed that 360 shares be set apart and the income be paid to Caroline Sueske during her lifetime with a provision like that in sub-paragraph (f) for their disposal at her death. Sub-paragraph (h) reads: "The rest, residue and remainder of my trust estate, after setting aside the portions referred to in paragraphs (c),

(d), (e), (f) and (g) hereof, shall by my trustee be transferred * * * over to my wife, Emma M. Sueske, my sister, Caroline C. Sueske, and my mother, Ottilia Sueske, in equal shares, and for their own use and behoof forever."

Emma M. Sueske renounced the provisions in the will and elected to take half the real and personal estate. By her renunciation she took absolute title to 740 shares of stock, and, as a result, 10 shares remained in the trust estate which had been set aside for her benefit under subparagraph (e) of paragraph five.

Under issues joined upon the complaint of Ottilia and Caroline C. Sueske, and a report of the master to whom the cause was referred, the chancellor entered a decree finding that in view of Schofield's capable management of the business, the plaintiffs were not entitled to an accounting from him as such trustee; that the 10 shares remaining in the trust estate set aside under sub-paragraph (e) became the property of Ottilia and Caroline Sueske under sub-paragraph (h); that the 730 shares directed to be set aside in sub-paragraphs (f) and (g) passed to Ottilia and Caroline Sueske, pursuant to sub-paragraph (h); that the trust should be terminated and an accounting should be made by the trustee of all moneys in his possession.

On Frank Schofield's appeal, as executor and trustee, the Appellate Court reversed the decree and held that the 10 shares relinquished by the widow should be held for disappointed legatees and did not pass to Ottilia and Caroline Sueske; that the trust property set aside in sub-paragraphs (f) and (g) did not become the property of Ottilia and Caroline Sueske under sub-paragraph (h); that the trust should not be terminated, and that no accounting on the part of the trustee was necessary. We granted leave to appeal from that judgment.

Appellants contend that the widow had a vested remainder in the trust estates set apart under sub-paragraphs (f) and (g) which, upon her renunciation, became the

property of Ottilia and Caroline Sueske under sub-paragraph (h); that the 10 shares relinquished by the widow by reason of her renunciation also passed to Ottilia and Caroline Sueske under sub-paragraph (h); that since they are entitled to the entire trust property the trust should be terminated; that an accounting of the trusteeship should be rendered, and that the Appellate Court erred in assessing costs against them.

A provision in a husband's will for his wife is in legal effect an offer on his part to purchase her statutory interest in his estate for the benefit of the estate. (*Blatchford* v. *Newberry,* 99 Ill. 11; *ReQua* v. *Graham,* 187 id. 67; *Dunshee* v. *Dunshee,* 251 id. 405.) Renunciation by the widow is a rejection of the provisions made for her, and, in effect, they are obliterated from the will. Its remaining provisions are not destroyed but remain operative upon the property not included within the statutory share of the spouse. (*McGee* v. *Vandeventer,* 326 Ill. 425; *Spaulding* v. *Lackey,* 340 id. 572.) The rule in this State is that in. the case of a contingent remainder, where it is dubious and uncertain as to what persons will be entitled to take, there can be no acceleration or vesting of the remainder by a renunciation of the particular estate by which the remainder is supported. (*Schaffenacker* v. *Beil,* 320 Ill. 31.) When contingent interests are devised depending on the devisees surviving the life tenant, the remaindermen must literally survive the person named as life tenant and not merely survive the determination of the life estate. (*Hasemeier* v. *Welke,* 309 Ill. 460; *Schaffenacker* v. *Beil, supra.*) Where part of the property remains after the renunciation, the estate renounced is not destroyed but, under section 79 of the Administration act (Ill. Rev. Stat. 1937, chap. 3, par. 80) is sequestered by the court to compensate disappointed legatees. (*Foreman Trust and Savings Bank* v. *Seelenfreund,* 329 Ill. 546; *Schaffenacker* v. *Beil, supra.*) Here, after the widow's renunciation by which she took

740 of the shares of stock included in paragraph (e), 10 shares remained. The disappointed legatees are the descendants or heirs of the widow. Their interests are contingent, and it is dubious and uncertain as to who will finally prove to be the remaindermen. This will remain uncertain until Emma M. Sueske dies. Under the rules above announced, these 10 shares do not fall into the residuary estate but they must be held by the trustee during the life of the widow, the income accumulated and it, together with the *corpus,* must be transferred to the proper legatees at her death.

It is argued the interests given Emma Sueske by sub-paragraphs (f) and (g) were vested remainders, and that, therefore, they fell into the residuary clause, sub-paragraph (h). The mother, Ottilia, and the sister, Caroline, are given equitable life estates by the two sub-paragraphs. These are obviously not affected by the renunciation of Emma M. Sueske, whose interests in both instances, are in remainder. We have pointed out that by these sub-paragraphs, Emma, the widow, was to take the 370 and 360 shares of stock at the death of Caroline Sueske, and that if Emma did not survive Caroline, Emma's descendants, and if she had none, then her heirs, were to get these 730 shares. Emma Sueske having renounced, there is a further contingency as to who may take the 730 shares in the event Emma survives Caroline Sueske, for Emma's heirs or descendants take only in the event she predeceases Caroline. Even if Emma's interests be called vested the will provides they will terminate if she does not survive Caroline. It is immaterial whether Emma's interests were vested remainders subject to be divested if she did not survive Caroline, or whether her interests were contingent remainders. In Simes Future Interests, volume 3, section 758, at page 240, it is said: "After all, a remainder vested subject to be wholly divested differs little in substance from a contingent remainder in the alternative." We

hold that the widow's renunciation had no effect upon the interests of her descendants or heirs, and that title to the 730 shares above mentioned did not vest in Ottilia or Caroline Sueske by reason of that renunciation. (*Schaffenacker* v. *Beil, supra.*) We do not attempt to determine now what will become of the 730 shares if the widow, Emma, survives Ottilia and Caroline Sueske, other than to say that the trust should not, at this time, be terminated.

Whether the power of testamentary disposition mentioned in sub-paragraph (e) is invalid, or was extinguished by the renunciation, or, as to the 10 shares, can be hereafter exercised by the widow, is wholly immaterial so far as appellants are concerned. If it is invalid or was extinguished, the contingent interests of the widow's descendants or heirs remain unaffected. On the other hand, if it can be hereafter exercised as to the 10 shares, the interests of her legatees would be substituted for the contingent interests of her descendants or heirs, and, under all of such situations, appellants would have no interest in the 10 shares.

The contention that the construction of the will applied by the Appellate Court violates the rule against perpetuities is without merit. The rule is that the vesting of a legacy may be postponed for a life or lives in being and twenty-one years thereafter. (*Howe* v. *Hodge,* 152 Ill. 252; *Anderson* v. *Williams,* 262 id. 308.) Here, the vesting of the shares of the copper company was to occur not later than the determination of lives in being.

Appellants contend that Frank Schofield, as executor and trustee, should account for the salary of $10,000 per year paid to him by the copper company, and fees received by the firm of Schofield & Wood and other persons in the law office of Schofield. The reasonableness of the salary which Schofield received from the company must be viewed in conjunction with the powers given him by the will, and his conduct of the business. The testator vested in him, as trustee, exceedingly broad powers which included that

of continuing the business of the Sueske Brass & Copper Company. He was empowered to manage the business in accordance with his best discretion; to discontinue it at any time if he thought it best; to hire attorneys, agents and such other help as he might deem necessary and to pay for such services out of the trust estate. It is evident, from the will, that the testator contemplated Frank Schofield would be in complete charge of the company just as the testator had been in his lifetime. The record shows that the trustee conducted the business capably. When he took charge, one of his first acts was to establish a new line of credit for the company to enable it to pay off a large loan. He reorganized several of its departments and made them more efficient. He was successful in cancelling several unprofitable contracts and in finding several new customers. While he was president, the company paid dividends in cash amounting to $52 per share during the past five years and totaling $68,000. The volume of business increased fifty-eight per cent in 1934, forty-two per cent in 1935 and eighty-seven and one-half per cent in 1936. Evidence appears in the record as to the usual and customary fee for the services Schofield performed. The master found the salary was not excessive or unreasonable; this finding was confirmed by the chancellor, and we see no reason for ordering the trustee to account for any moneys he received as salary.

The fees for legal services received by the firm of Schofield & Wood and by Kraft, who worked in Schofield's office and acted as his attorney when executor, were never objected to by appellants prior to this suit. Two of the fees, amounting to $1500 and $1125 respectively, were allowed by the probate court of Cook county in proceedings in which appellants were represented by counsel. They filed no objections to the fees at that time. The other fee objected to was for $500 paid by the corporation to the firm of Schofield & Wood for foreclosing a mortgage. This

fee was allowed by the court which rendered the fore-closure decree, and in this proceeding the master found it proper and reasonable. Appellants did not allege in their complaint the fees were improper. Nowhere have they alleged any impropriety on the part of the trustee. The trial court approved the master's report as to fees, and the record does not show appellants are entitled to an accounting therefor.

It is urged that in view of section 24 of the Costs act (Ill. Rev. Stat. 1939, chap. 33, par. 24) the Appellate Court erred in assessing the costs of appeal against appellants, but we observe no abuse of discretion or error by the Appellate Court in this regard.

The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*

SHAW, J., dissenting.