658 F.2d 487
 Doris Fuller CHILDS, Eleanor Fuller Parson, Natalie
Stocking, Priscilla Parson and Katherine Marrs,
beneficiaries of the Judson M. Fuller
Trust, Plaintiffs-Appellants,
v.
NATIONAL BANK OF AUSTIN, an Illinois corporation and Trustee
of the Judson M. Fuller Trust; Carey, Filter & White, a
partnership; Robert F. Carey, an individual partner; Thomas
F. Carey, an individual partner; Edward M. White, an
individual partner; Edmund P. Boland, an individual partner;
Anthony Carey, an individual partner; and Patrick S. Filter,
an individual partner and Chairman of the Board of National
Bank of Austin and the Harrington and King Perforating
Company, Inc., Defendants-Appellees.
 No. 80-2703.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 11, 1981.
Decided Aug. 25, 1981.
 
 1
 John H. Anderson, Chicago, Ill., for plaintiffs-appellants.
 
 
 2
 Arthur L. Klein, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., for defendants-appellees.
 
 
 3
 Before SWYGERT, Senior Circuit Judge, SPRECHER, Circuit Judge, and LARSON, Senior District Judge.*
 
 
 4
 LARSON, Senior District Judge.
 
 
 5
 This appeal presents issues that evolve from a rather deeply intertwined control over both a testamentary trust and the corporation partially owned by the trust. A single individual serves as chairman of the board of the trustee bank and member of the bank's trust committee, chairman of the board of the corporation, and senior partner in the law firm that advises both the trustee and the corporation. The trust beneficiaries claimed in this lawsuit that the trustee and the individual defendants breached their fiduciary duties to the trust. After trial on the merits of the claim, the district court entered judgment adverse to the beneficiaries and we are asked in this appeal to determine whether the district court erred in its ruling.
 
 
 6
 Judson M. Fuller established the Fuller Trust in his will, which was executed on March 6, 1953. The trust instrument provided that Fuller's shares in the Harrington and King Perforating Company (Harrington and King), 67.7% of the total outstanding shares of the company, would be the trust property to be managed for the benefit of his children and their heirs. Fuller named as co-trustees his son, Judson E. Fuller, and the National Bank of Austin (the Bank). Paragraph 4(a) of the instrument empowers Judson E. Fuller, for as long as he desires, with the sole voting authority over the stock owned by the Fuller Trust to be voted in a manner which is in the best interests of the beneficiaries and the corporation. Paragraph 4(e) gives the trustee or the surviving co-trustee, the Bank, the power to deal with the stock in the best interests of the beneficiaries. Judson M. Fuller died on February 5, 1963, and the Fuller Trust was created. The Bank was the executor of Judson M. Fuller's estate.
 
 
 7
 At the time of Judson M. Fuller's death, Judson E. Fuller was the President, Chairman of the Board and Chief Executive Officer of Harrington and King, and a member of the Board of Directors of the Bank. When the Fuller Trust was created, Judson E. Fuller became the sole trustee and a beneficiary of the Trust in addition to retaining his extensive management duties at Harrington and King, now owned principally by the Trust. Fuller voted the Trust shares to install Patrick S. Filter as a member of Harrington and King's Board of Directors in 1964. When Judson E. Fuller died in 1972, the Bank became the trustee and Patrick Filter was elected Chairman of the Board at Harrington and King, a position which Filter contends was reluctantly assumed in order to prevent the election of an inappropriate chairman. In addition to the management position at Harrington and King, Filter is the Chairman of the Board of the Bank, a member of the Bank's trust committee, and senior partner in the Chicago law firm of Carey, Filter & White, which is legal counsel for the Bank and Harrington and King. Filter personally receives a salary as Chairman of the Board of Harrington and King, director's fees, and a 19% share in the law firm profits. He has abstained from voting on any of these related matters during Harrington and King board meetings and has refused to participate on the Bank's trust committee whenever the Fuller Trust is considered.
 
 
 8
 The trust beneficiaries primarily contended at trial that the trustee Bank's participation in management activities created an improper conflict of interest and that Filter, as agent of the Bank, cannot place himself in a situation where conflicts may arise, nor may he personally profit from the position in which he placed himself at Harrington and King. The Bank, according to the beneficiaries, breached its fiduciary duties to the trust by permitting Filter's election. The beneficiaries sought removal of the Bank as trustee, removal of Filter from Harrington and King's Board of Directors, and recovery of damages from the Bank, Filter, and the law firm. The district court found that a conflict of interest does indeed exist, primarily because of the problem that would arise if the beneficiaries decided to sell the stock owned by the trust. Harrington and King stockholders are obligated to offer to sell their stock first to the corporation. The trustee would thus be obligated to sell the stock owned by the trust to Harrington and King. Filter, as Harrington and King's Chairman, would be obligated to purchase the stock at as low a price as possible in order to benefit the corporation. Filter, as agent of the trustee Bank, would be obligated to obtain as high a price as possible in order to advantage the beneficiaries. The district court found, however, that the conflict was intended by Judson M. Fuller, and was therefore not improper. The court also determined that Filter need not refund to the trust the personal compensation he has received from his management role at Harrington and King because he is not the actual trustee but merely the agent of the trustee and because to surcharge him would compel him to serve as chairman without compensation. The court also found that since the legal fees paid to Filter's law firm were reasonable, Filter had not abused his power in any way. The Bank's actions in permitting Filter to attain his position at Harrington and King were found to be within its discretion as trustee. Each of these issues has been appealed to this Court and are now before us in this appeal.
 
 I. THE INTENT OF JUDSON M. FULLER
 
 9
 The district court found that a conflict of interest does exist, but that Judson M. Fuller intended the conflict and, as a result, the conflict is not improper. The court's finding that Judson M. Fuller intended the conflict is a finding of fact that cannot be set aside unless it is "clearly erroneous." Fed.R.Civ.P. 52(a). See also Oscar Gruss & Son v. First State Bank of Eldorado, 582 F.2d 424, 430-31 (7th Cir. 1978).
 
 
 10
 Under Illinois law, a fiduciary and trustee may not obtain any profit or advantage from his dealings with the trust property, Winger v. Chicago City Bank and Trust Company, 325 Ill.App. 459, 472, 60 N.E.2d 560, 566-67 (1st Dist. 1945), reversed on other grounds, 394 Ill. 94, 67 N.E.2d 265 (1946), nor may a fiduciary place himself in a position in which his personal interests conflict with those of the trust's beneficiaries. Campbell v. Albers, 313 Ill.App. 152, 165, 39 N.E.2d 672, 679 (1942). Because of the fiduciary relationship, trustees are "obligated to act with the highest degree of fidelity and with utmost good faith toward the beneficiaries." Wallace v. Maloody, 4 Ill.2d 86, 94, 122 N.E.2d 275, 279 (1954) (quoted in Tankersley v. Albright, 374 F.Supp. 538, 543 (N.D.Ill.1974), rev'd on other grounds, 514 F.2d 956 (7th Cir. 1975)). The district court quite properly found a clear conflict of interests between Filter's role as Chairman of the Board of the Bank and his role as Chairman of the Board of Harrington and King.
 
 
 11
 There is, however, a well-recognized exception to the general rule in Illinois that a trustee may not place himself in a position where his interests may conflict with the interests of the trust property. When the conflict of interest is contemplated, created, and expressly sanctioned by the trust instrument, the conflict may be permitted to exist. Id.; Conant v. Lansden, 341 Ill.App. 488, 502, 94 N.E.2d 594, 601 (4th Dist. 1950), rev'd in part on other grounds, 409 Ill. 149, 98 N.E.2d 773 (1951). Thus, there is an exception when the "Trust clearly evidences the settlor's intent that there be identity between Trustees and Company personnel, ...." Tankersley, 374 F.Supp. at 543 (emphasis added). As the district court noted, the exception is "founded upon the common situation where a testator, who owns what he considers a thriving business, appoints as trustee an individual who is familiar with the business and who is to continue to take an active role in the daily operation of the business." Childs v. National Bank of Austin, 499 F.Supp. 1096, at 1102 (N.D.Ill.1980). See Conant, 341 Ill.App. at 502, 94 N.E.2d at 601.
 
 
 12
 In ascertaining the intent of the settlor, a court must look first to the instrument itself, Continental Illinois National Bank and Trust Company of Chicago v. Clancy, 18 Ill.2d 124, 127, 163 N.E.2d 523, 526 (1959). When an ambiguity is apparent in the trust instrument, the court may also consider the surrounding circumstances at the time that the instrument was executed in order to help determine the meaning of the language used by the settlor. Id.; Plast v. Metropolitan Trust Co., 401 Ill. 302, 313, 82 N.E.2d 155, 160 (1948); Northern Trust Co. v. Winston, 32 Ill.App.3d 199, 206, 336 N.E.2d 543, 548 (1st Dist. 1975). Furthermore, several cases suggest that it may be proper when interpreting a trust instrument to consider extrinsic events subsequent to the execution of the will if such evidence is in some way indicative of the settlor's intent at the time of the execution. See Weir v. Leafgreen, 26 Ill.2d 406, 415, 186 N.E.2d 293, 298 (1962); Northern Trust Co., 32 Ill.App. at 207, 336 N.E.2d at 549. See generally Continental Illinois National Bank, 18 Ill.2d at 127, 163 N.E.2d at 526.
 
 
 13
 The intent that we must find in this set of circumstances is Judson M. Fuller's intent that the Bank assume a senior management role at Harrington and King once it succeeded to the powers of the trustee of the Fuller Trust. That intent is not clear from the trust instrument itself. In fact, the instrument does not even "clearly evidence" any intent that Judson E. Fuller should assume the dual role of trustee and management. Although neither of the co-trustees was expressly authorized by the instrument to manage Harrington and King, the discretionary power to "deal with" the stock that was granted to both Judson E. Fuller and the Bank suggests that the senior Fuller may have anticipated a dual capacity for both trustees. In any event, the language reeks of ambiguity and we must therefore look for assistance to the extrinsic circumstances at the time of the execution of the will. Id.
 
 
 14
 The thrust of defendants' arguments is that since Judson M. Fuller evidenced an intent that his son assume a dual role, he must have intended the Bank, to whom he gave similar powers in Paragraph 4(e), to succeed to the same dual role. The younger Fuller's management position with Harrington and King was well-established at the time the trust was executed. Subsequent events, which occurred while his father was alive, only solidified Fuller's strong position at Harrington and King. While extrinsic circumstances tend to support Judson E. Fuller's use of the trust vote to further his own involvement in Harrington and King's management, the factors supporting a grant of similar powers for the Bank are somewhat less compelling. While Judson M. Fuller granted identical powers to the co-trustees in Paragraph 4(e), he appears to have given a slightly broader right to his son in Paragraph 4(a). The language of Paragraph 4(a) authorizes the younger Fuller to vote the stock for the benefit of the company and the beneficiaries, while Paragraph 4(e) authorizes both Fuller and the Bank to "deal with" the stock for the benefit of the beneficiaries. Furthermore, the fact that Judson E. Fuller was also a beneficiary distinguishes him somewhat from the Bank which is not a beneficiary. At the same time, however, it is surely not unreasonable to assume that Judson M. Fuller intended that the Bank succeed to the same powers as Judson E. Fuller. The senior Fuller was not unfamiliar with the Bank; he had dealt with it on occasion and had appointed it as executor of his estate.
 
 
 15
 The resolution of this issue, as in many cases in which the intent of a testator is at issue, is difficult. It does appear clear to us that Judson M. Fuller intended that Judson E. Fuller assume a management role at Harrington and King while serving as trustee. Furthermore, it is not clear to us that the senior Fuller intended to grant the Bank any different powers from what he granted his son. While we express some doubt as to whether evidence of the specific intent seemingly required by Illinois law is sufficient in this case, see Conant, 341 Ill.App. at 502, 94 N.E.2d at 601, we are not convinced that the district court finding on this issue is "clearly erroneous."
 
 II. FILTER'S PERSONAL PROFIT
 
 16
 The issue of whether a trustee may personally profit from his management position when the settlor intended that he perform the dual role is not clearly settled in Illinois. See Bogart, Trusts & Trustees § 543(N) p. 331 (2d ed. Rev. 1978). There are two distinct lines of cases concerning the issue and both have been adopted in Illinois. The beneficiaries urge us to apply the holding of Stone v. Baldwin, 348 Ill.App. 225, 109 N.E.2d 244 (2d Dist. 1952), rev'd on other grounds, 414 Ill. 257, 111 N.E.2d 97 (1953), to the case before us. Stone found that
 
 
 17
 a testamentary trustee with express or implied authority to manage or participate in the management of a business or corporation if he deems it advisable while exercising good faith, sound judgment, and reasonable discretion, may manage the business or vote himself an officer of such corporation. If such position is obtained through his own act as trustee and he receives compensation therefor, he must account for same to the trust. His fiduciary duties come first for which he can rightfully be paid, but he cannot profit otherwise. (Emphasis added.)
 
 
 18
 Id., 348 Ill.App. at 243, 109 N.E.2d at 253. Under the Stone rule, Filter would be obligated to account to the trust for the salary he has received as Chairman at Harrington and King. Defendants, on the other hand, urge us to adopt Sueske v. Schofield, 376 Ill. 431, 34 N.E.2d 399 (1941), which found that a trustee need not be surcharged the fees he earned performing managerial functions when he was granted in the will the power to perform those functions, and the fees he received were reasonable. Accord, Conant, 341 Ill.App. at 502, 94 N.E.2d at 601. Since the salary Filter has received has been reasonable, defendants contend, he need not account for the fees. The district court recognized the Stone rule, but factually distinguished Stone from the case now before us.
 
 
 19
 Although the Stone and Sueske decisions may appear to be inconsistent we do not agree. Sueske, which permits reasonable compensation, is applied primarily in situations in which an individual was appointed trustee solely because he was an officer of the corporation and the will specified that the trustee must be an officer, Tankersley, 374 F.Supp. at 543, or when the individual who was appointed trustee was a trusted officer or business partner already with the corporation whom the settlor specifically wanted to run the corporation, Sueske, 376 Ill. at 437, 34 N.E.2d at 402. In such a situation, the courts have reasoned, it would be clearly inequitable to force an officer to resign his managerial position or to disgorge his salary, provided that the amount is reasonable. The very reason for the person being selected as trustee in such cases is that he is an officer of the corporation. Conant, 341 Ill.App. at 502, 94 N.E.2d at 601.
 
 
 20
 Stone, on the other hand, applied the general rule that a fiduciary may not profit personally from his position as trustee, Stone, 348 Ill.App. at 243, 109 N.E.2d at 253, and found no equitable factors similar to those found in the Sueske case. In Stone, the trustee used his powers as trustee to "obtain" an additional management position for which he was paid. Id. The court required him to account to the trustee for the money he received. Id. The key difference, in our view, is that the trustee in Stone used his position to gain an additional management position, while the trustees in Sueske and Conant were already involved in corporate management. The Stone rule does not mandate removal of the trustee, as long as he has not acted in bad faith. Rather, it permits him to continue the dual role if he is authorized to do so and he deems it prudent to do so. The rule merely requires that he account for his management salary to the trust.
 
 
 21
 It is our view that the circumstances of the case now before us fall squarely within the ambit of the Stone rule. In fact, Stone appears to be especially applicable here since, unlike in Stone, Filter was not an individual who was specifically mentioned in the will nor was he a Harrington and King employee prior to the creation of the Fuller Trust. In addition, as noted earlier, it is not even entirely clear that Judson M. Fuller intended the Bank to assume an active management role at Harrington and King.
 
 
 22
 Defendants contend that the primary purpose of the Stone rule is to prevent a fiduciary from being paid twice as trustee and as a manager for performing substantially similar tasks. The duties of the individual in Stone, who served as trustee, president, and chairman of the board, were relatively interchangeable and thus he was being overpaid. In the case now before us, Filter was not the actual trustee and he performed entirely different duties as Chairman than the Bank performed as trustee.[1] While the two cases can certainly be factually distinguished in the manner pointed out by defendants, we do not find the distinction to be persuasive. The Stone rule is not based, in our view, on the mere mechanical reasoning of preventing a double payment, although that reasoning may in some cases provide additional justification. Rather, the rule has its base in more ethical considerations. Although the duties performed may be different, Filter has achieved his managerial position directly as a result of the Bank's role as trustee.[2] The inquiry lies in how and when the individual achieved his position, not in what he does in that position. It bears repeating here that it was not wrong for Filter to have been elected Chairman of the Board at Harrington and King. He may serve in that position, but he must account to the Fuller Trust for the money he receives. The trustee's first master must be the trust even when the settlor intends that the trustee be represented in management.
 
 
 23
 Filter strongly emphasizes the fact that he withdraws whenever there may be a conflict and that he does not participate on the Bank's trust committee whenever the Fuller Trust is debated. It seems quite impossible, however, for an individual who is chairman of the trustee bank and chairman of the corporation owned by the trust property to totally divorce himself from the trust. And, as a representative of the trustee, Filter should not be totally divorcing himself from the trust.
 
 
 24
 Defendants are quite correct in their claim that our resolution of this issue places form over substance. There is no evidence that Filter has been self-dealing for his own personal profit. However, the Stone rule does not wait for a trustee to self-deal it prohibits him from profiting from the trust because his first duty is to the trust property. The exception to this rule that is found in the Sueske decision merely prevents the inequitable result which would occur when an individual within the corporation is named to the trusteeship. The district court incorrectly applied Stone v. Baldwin to the circumstances of this case. Its finding that Patrick Filter need not refund the salary he received as Chairman of the Board at Harrington and King must be reversed.
 
 
 25
 A second part of the issue of Patrick Filter's personal profit concerns the retainer and fees paid to Filter's law firm, Carey, Filter & White. The law firm has been counsel to Harrington and King since before Judson M. Fuller executed his will. They have been on retainer since before Filter became Chairman of the Board of Harrington and King. There is no evidence that the law firm has received this business as a result of the Bank's and Filter's roles under the trust instrument. Thus, our inquiry must be directed toward the reasonableness of the compensation. Sueske v. Schofield, 376 Ill. at 438-39, 34 N.E.2d at 402. There is no evidence that the fees paid have been unreasonable in any way and, therefore, the district court's finding that the trust should not recover any of the fees paid to the law firm must be affirmed.
 
 III. FILTER'S CONFLICTS OF INTEREST
 
 26
 The beneficiaries contend that Filter as an individual may not continue as Chairman of the Board at Harrington and King, even assuming that Judson M. Fuller intended the Bank to be active in the management of the company. Their claim is based on the conflict between the fiduciary duties of Filter to the Trust and the personal interests of Filter as Chairman of the Board of Harrington and King and recipient of 19% of the law firm's profits. However, Filter is an agent of the Bank, and Judson M. Fuller intended the Bank to assume a management role. The Stone rule expressly permits the trustee to assume a role in management if it appears prudent for him to do so. Stone, 348 Ill.App. at 243, 109 N.E.2d at 253. He must, of course, account to the trust for any compensation he receives in the management role, id., but in the absence of bad faith he may serve in the management. We have determined that Judson M. Fuller intended the conflict between the interests of the trustee and the interests of the company. Any personal conflict Filter may have as a result of the salary he has received has been remedied by the result we reached in Part II.
 
 
 27
 IV. BANK'S BREACH OF RESPONSIBILITY TO THE TRUST
 
 
 28
 The alleged breach of the trustee bank's responsibility to the Fuller Trust is based on the Bank's activities in permitting Patrick Filter to assume the chairmanship at Harrington and King and to personally profit from it. Under Illinois law, discretionary decisions by trustees are not to be overturned in the absence of extenuating circumstances such as bad faith, fraud, or an abuse of discretion. Tankersley v. Albright, 374 F.Supp. at 543; Continental National Bank v. Sever, 393 Ill. 81, 93, 65 N.E.2d 385, 391 (1946). There is no evidence of bad faith, fraud, or abuse of discretion here. The trial court applied the correct law, and its conclusion was not clearly erroneous.
 
 
 29
 We do not intend to imply in this Opinion that we approve of the type of tightly intertwined control presented by the circumstances of this case. Nor do we intend, however, to imply that the defendants have acted in bad faith. Harrington and King certainly has not suffered under the arrangement. Nevertheless the arrangement raises serious questions concerning the appearance of improprieties, the existence of which is met with strong disapproval in the rules governing conflicts of interest. "Unquestionably, trustees are 'obligated to act with the highest degree of fidelity and with utmost good faith toward the beneficiaries.' " Tankersley, 374 F.Supp. at 543 (quoting Wallace v. Maloody, 4 Ill.2d 86, 94, 122 N.E.2d 275, 279 (1954)).
 
 
 30
 The judgment of the district court is affirmed in all respects with the exception of its finding that Patrick Filter need not account to the Fuller Trust for the salary he received as Chairman of the Board of Harrington and King. The district court incorrectly applied Illinois law on that issue and must be reversed. The case will be remanded to the district court to enter judgment consistent with our decision.
 
 
 
 *
 The Honorable Earl R. Larson, United States Senior District Judge for the District of Minnesota, is sitting by designation
 
 
 [1]
 The fact that Filter is not the actual trustee is immaterial. He is an officer of the trustee bank and that is sufficient. Were he an outsider selected by the trustee bank to be the Chairman of the Board at Harrington and King, presumably Stone would not apply
 
 
 [2]
 Filter also asserts that he received his position from directors who are unconnected with the Bank. He may have been elected by the directors, but the trust vote, controlled by the Bank, is instrumental in the selection of the directors