**Doris Fuller CHILDS, Eleanor Fuller Parson, Natalie Stocking, Priscilla Parson and Katherine Marrs, beneficiaries of the Judson M. Fuller Trust, Plaintiffs,**

v.

**NATIONAL BANK OF AUSTIN, an Illinois Corporation and Trustee of the Judson M. Fuller Trust; Carey, Filter & White, a partnership; Robert F. Carey, an individual partner; Thomas F. Carey, an individual partner; Edward M. White, an individual partner; Edmund P. Boland, an individual partner; Anthony Carey, an individual partner; and Patrick S. Filter, an individual partner and Chairman of the Board of National Bank of Austin and the Harrington and King Perforating Company, Inc., Defendants.**

No. 78 C 3990.

United States District Court, N.D. Illinois, E.D.

Nov. 22, 1983.

Raymond I. Geraldson, Andrew R. Laidlaw, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for plaintiffs.

Edmund P. Boland, Edward M. White, Carey, Filter & White, Louis A. Lehr, Jr., Richard K. Wray, Arnstein, Gluck, Weitzenfeld & Minow, Donald T. Bertucci, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Doris Fuller Childs, Eleanor Fuller Parson, Natalie Stocking, Priscilla Parson and Katherine Marrs sued Patrick S. Filter ("Filter"), the National Bank of Austin as trustee of the Judson M. Fuller Trust ("Austin") and Carey, Filter & White, a law firm, seeking removal of Austin as trustee, removal of Filter as Chairman of the Board of the Harrington & King Perforating Company, recovery of fees paid to Austin as trustee, recovery of fees paid to Filter as Chairman of the Board and recovery of retainer fees to the law firm. The district court entered judgment in favor of defendants, *Childs v. National Bank of Austin,* 499 F.Supp. 1096 (N.D.Ill.1980). On appeal, the Seventh Circuit affirmed in part and reversed in part, 658 F.2d 487 (7th Cir.1981). The Court affirmed the district court in all respects with the exception of its finding that Filter need not account to the Judson M. Fuller Trust for the salary he received as Chairman of the Board of Harrington & King. The case was remanded to the district court.

On March 31, 1982, the district court entered judgment against Filter in the amount of $137,779.50 plus interest. The Court ordered Filter to deposit the funds with the Clerk of Court on October 29, 1982, holding that the deposit would constitute satisfaction of judgment, and ordering the parties to submit proposed disbursement orders. Presently before the Court are the parties' memoranda concerning disbursement of the judgment fund, plaintiffs' counsels' ("petitioners") motion for leave to file a petition to enforce an attorneys' lien and plaintiffs' motion for attorneys' fees. For reasons set forth below, petitioners' motion is denied, plaintiffs' motion is granted and the judgment fund is distributed as set forth in this opinion.

### Petitioners' Attorneys' Lien

Petitioners seek leave to file a petition to enforce an attorneys' lien. Petitioners would satisfy their lien out of the funds deposited by Filter with this Court. Austin maintains that petitioners cannot file their petition pursuant to the Illinois Attorneys' Lien Act, Ill.Rev.Stat. ch. 13 § 14.

According to ch. 13 § 14,

Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and be-

tween such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such attorneys rendered or to be rendered for their clients on account of such suits, claims, demands or causes of action. To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice. On petition filed by such attorneys or their clients any court of competent jurisdiction shall, on not less than 5 days' notice to the adverse party, adjudicate the rights of the parties and enforce such lien.

The Seventh Circuit has held that federal district courts have jurisdiction to entertain attorneys' fee issues pursuant to the lien created by ch. 13 § 14, because if the original action has a proper basis for federal jurisdiction, any recovery realized by the suit creates an attachable interest upon which an attorney may assert a fee claim. *Clarion Corp. v. American Home Products Corp.*, 464 F.2d 444, 445 (7th Cir. 1972). Thus, in *Clarion*, the Court affirmed enforcement of an attorneys' lien brought by plaintiff's counsel against the plaintiff. The *Clarion* recovery was a settlement plaintiff accepted from the defendant. And in *Peresipka v. Elgin, Joliet & Eastern Ry. Co.*, 231 F.2d 268 (7th Cir. 1956), the Court held that an intervening attorney asserting an attorneys' lien became a joint claimant and acquired an interest in any judgment rendered in favor of the plaintiff. In so holding, the Court quoted as follows from *Baker v. Baker*, 258 Ill. 418, 421, 101 N.E. 587, 588 (1913):

By serving the notice claiming a lien the attorney in effect becomes a joint claim-

ant with his client in any judgment or decree that may be rendered or in the proceeds of any settlement that may be made by the client, and to the extent of the amount of his fee has the same interest in such proceeds, judgment or decree as his client and is entitled to his *pro rata* share thereof. In short, when the notice claiming a lien is served on the defendant or debtor under this statute it has the effect of an assignment of an interest in any judgment or decree that may be rendered or in the proceeds of any settlement that may be made by the client, and is such an assignment that the defendant or debtor is bound to respect. This creates a new and a substantial right in favor of the attorney and divests the client of substantial rights that he theretofore possessed.

 We believe that the above cases are inapposite to the instant matter. Although petitioners' clients are trust beneficiaries of the Judson M. Fuller Trust, neither the remaindermen to the trust, nor the other income beneficiaries of the trust have been joined as parties to this lawsuit. The money deposited with the Court by Filter, however, must be accounted to *the trust*, according to the Seventh Circuit. *Childs v. National Bank of Austin*, 658 F.2d 487, 491–93 (7th Cir.1981). Therefore, petitioners' clients do not themselves have any attachable interest upon which petitioners may assert their claim for fees. Plaintiffs lack the authority to bind the trustee or the additional trust beneficiaries to the agreement they entered into with petitioners. *Mercer v. Chicago Ry. Co.*, 174 Ill.App. 234, 237–38 (1st Dist.1912). As a result, petitioners' motion for leave to file their petition to enforce their attorneys' lien must be denied.

### Plaintiffs' Alternative Motion for Attorneys' Fees

As an alternative to petitioners' motion to enforce their attorneys' lien, plaintiffs have moved for an award of attorneys' fees. Plaintiffs invoke a doctrine known as the "trust benefit exception," and claim

that they are entitled to fees because their attorneys' services in the present litigation benefitted the trust. Austin insists that in Illinois, attorneys' fees are generally not awarded absent a statute or agreement to the contrary. Moreover, it argues that the trust benefit exception does not apply, since plaintiffs' suit to remove it as trustee was unsuccessful, and since any "benefit" would be conferred only upon the petitioners and not the trust.

In *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 the Supreme Court cited the general rule that

> where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts.

*Id.* at 533, 26 L.Ed. 1157. This rule has been adopted in Illinois. *First National Bank v. LaSalle-Wacker Building Corp.*, 280 Ill.App. 188, 197 (1st Dist.1935); *see also State Life Insurance Co. v. Board of Education*, 401 Ill. 252, 258, 81 N.E.2d 877, 880–81 (1948).

■ We believe that the instant case falls under the trust benefit exception.[1] While plaintiffs were unsuccessful in removing Austin as trustee, they undoubtedly obtained a money judgment in favor of the trust. The Seventh Circuit, moreover, issued a warning to Austin concerning Filter's involvement in the trust management:

> We do not intend to imply in this Opinion that we approve of the type of tightly intertwined control presented by the circumstances of this case. Nor do we intend, however, to imply that the defendants have acted in bad faith. Harrington and King certainly has not suffered under the arrangement. Nevertheless the

arrangement raises serious questions concerning the appearance of improprieties, the existence of which is met with strong disapproval in the rules governing conflicts of interest. "Unquestionably, trustees are 'obligated to act with the highest degree of fidelity and with utmost good faith toward the beneficiaries.'" *Tankersley* [*v. Albright*], 374 F.Supp. [538] at 543 (quoting *Wallace v. Maloody*, 4 Ill.2d 86, 94, 122 N.E.2d 275, 279 (1954)).

*Childs*, 658 F.2d at 494. Attorneys' fees have been allowed from a trust notwithstanding a failure to remove a trustee, where as a result of a lawsuit the trustee discontinued certain management practices. *In re Freeman's Trust*, 247 Minn. 50, 75 N.W.2d 906, 911 (Minn.1956). We believe that plaintiffs' recovery of Filter's salary for the trust constitutes a benefit to the trust as a whole. Accordingly, plaintiffs' motion for attorneys' fees in the sum of $105,000 is granted. This amount shall be disbursed to petitioners out of the judgment fund presently deposited with the Court.

### Disbursement of the Judgment Fund and Austin's Claim for Attorneys' Fees [2]

In its memorandum in support of a proposed judgment order, Austin asserts that the fund deposited by Filter with the Court should be credited to the trust as corpus and not as income. Austin as trustee, moreover, claims that it is entitled to $28,921.25 attorneys' fees for defending against the plaintiffs' lawsuit, and that the fees should come from trust income rather than from corpus. Plaintiffs respond that any sum paid to the trust should be distributed to trust beneficiaries as income. They further maintain that Austin is not entitled to attorneys' fees.

■ In Illinois, where a beneficiary brings a groundless suit against a trustee,

---

**1.** We therefore need not address plaintiffs' alternative argument that attorneys' fees should be awarded pursuant to the "fund doctrine." *See, e.g., Baier v. State Farm Insurance Co.*, 66 Ill.2d 119, 5 Ill.Dec. 572, 361 N.E.2d 1100 (1977).

**2.** While Austin never formally moved for an award of attorneys' fees, its proposed disbursement order sought such an award.

the trustee's attorneys' fees and expenses are to be paid out of the complaining beneficiary's share in the trust estate, and not charged against the estate generally. *Patterson v. Northern Trust Co.*, 286 Ill. 564, 567, 122 N.E. 55, 56 (1919); *see also Templeton v. Continental Illinois National Bank & Trust Co.*, 429 F.Supp. 1294, 1304 (N.D.Ill.1977). We do not believe, however, that plaintiffs' suit was groundless, and we decline to award Austin the attorneys' fees it seeks.

■ The Illinois Principal and Income Act provides little guidance for resolving the distribution of the remaining $39,-981.78, despite the definitions of principal and income which it contains.[3] The Act does, however, provide that the intent of the settlor should govern the ascertainment of income and principal. Ill.Rev.Stat. ch. 30 § 503. Judson M. Fuller's Trust instrument provided that shares of stock in Harrington and King would constitute the sole trust property, to be managed for the benefit of his children and their heirs. The trustee is to disburse all income to the trust beneficiaries.[4] This indeed suggests, as plaintiffs maintain, Judson M. Fuller's intent that funds which might come into the trust, such as the judgment against Filter, be passed on to the beneficiaries as income. This conclusion is supported by a provision of the trust instrument which provided that cash received upon the sale of the trust property should be distributed to the beneficiaries.[5] We therefore believe

---

3. Ill.Rev.Stat. ch. 30 § 504 provides, in relevant part, that:

 (a) Income is the return in money or property derived from the use of principal, including return received as:

 (1) rent of real or personal property ...
 (2) interest received ...
 (3) income earned during administration of a decedent's estate ...
 (4) corporate distributions ...
 (5) accrued increment on bonds or other obligations issued at discount ...
 (6) receipts from business and farming operations ...
 (7) receipts from disposition of natural resources ...

 (b) Principal is the property which has been set aside by the owner or the person legally empowered so that it is held in trust eventually to be delivered to a remainderman, while the income is in the meantime taken or received by or held for accumulation for an income beneficiary. Principal includes:

 (1) consideration received by the trustee on the sale or other transfer of principal or on repayment of a loan or as a refund or replacement or change in the form of principal;
 (2) proceeds of property taken on eminent domain proceedings;
 (3) proceeds of insurance upon property forming part of the principal except proceeds of insurance upon a separate interest of an income beneficiary;
 (4) stock dividends, receipts on liquidation of a corporation and other corporate distributions ...
 (5) receipts from the disposition of bonds or other obligations ...
 (6) receipts from disposition of natural resources ...
 (7) receipts from other principal subject to depletion ...

 (8) any profit resulting from any change in the form of principal;
 (9) any allowances for depreciation ...
 (10) receipts from the granting of options.

4. According to Paragraph 4(b) of the trust instrument,

 From the income of the Trust Estate the Trustees shall pay all expenses of the Trust, including Trustees' and attorney's fees, if any, taxes which may be levied or assessed against the corpus or the income of the Trust Estate and all other expenses of the Trust of every kind, character and nature whatsoever. After payment of all such expenses, if any, the Trustees shall distribute the remaining income of the Trust Estate equally between my three daughters, DORIS FULLER CHILDS, MARGARET FULLER and ELEANOR FULLER PARSON and my son, JUDSON EARL FULLER.

5. Paragraph 4(d) of the trust provides that:

 Should at any time during the lifetime of the Trust Estate all of the adult beneficiaries direct the Trustees or Trustee to sell the stock belonging to the Trust Estate, such stock may then be sold by the Trustees or Trustee upon payment to them or it of what they or it shall at such time consider a fair and reasonable price for such stock and also after complying with the restricted sales provisions of the company pertaining to the sale of its stock. Should such sale be effected by the Trustees in accordance with the provisions of this paragraph, the Trust Estate thereupon shall cease and determine without regard for the prior provisions relative to its termination and the Trustees or Trustee shall thereupon make distribution of the proceeds of the sale of stock after payment of Trustees' fees, attor-

that the remaining sum of $39,981.78 should be distributed by the trustee as income.

Accordingly, petitioner's motion for leave to file a petition to enforce an attorneys' lien is denied; plaintiffs' motion for attorneys' fees is granted. No attorneys' fees are awarded to Austin, and the remaining funds on deposit with the Court are to be distributed as income. It is so ordered.

ney's fees, taxes and other expenses in connection therewith in the same fashion as herein-

before provided for distribution of the corpus of the estate following its termination.